## SETH P. HEYWOOD *vs.* DAVID W. MINER & another.

Under a bill in equity on which the defendants had been enjoined from flowing, by their dam, water back upon the wheels in the plaintiff's mill, and the plaintiff had applied for an attachment against the defendants for contempt in violating the injunction, the parties entered into an agreement that the case should be sent to an engineer, as master, to determine and report to what height the water could be raised by the defendants' dam without setting back water upon the plaintiff's wheels, and whether, since the injunction, the defendants had raised the water so as to set it back upon the plaintiff's wheels; the defendants to keep the water at the height so fixed during the pendency of the injunction; if it should be found that the water had been raised beyond such height since the injunction, the defendants to pay the costs of the application and hearing; the plaintiff to be entitled, if he saw fit, to apply further to the court in regard to the matter of the contempt; and on the coming in of the engineer's report, either party to be at liberty to introduce further evidence on the point whether the defendants had raised the water so as to set it back on the plaintiff's wheels since the injunction; and an order of court was passed referring the case to the master, in substantial conformity with this agreement. Later the parties agreed that the master should indicate the height to which the defendants' dam might be maintained until he should finally determine the height at which it might be kept. *Held,* that these agreements were not a waiver of the plaintiff's right, on the coming in of the master's report, to apply for an attachment against the defendants for the alleged contempt in violating the injunction before the agreements were made.

A case was referred to a master to report whether the defendants had raised the water of a stream, when it was not unusually swollen, so as to set it back on the wheels of the plaintiff's mill. *Held,* that the master did not go beyond the terms of the reference by reporting that the defendants had "negligently and knowingly" done so.

A master, by leave of court, may amend his report by correcting an error of expression so as to correctly present the result at which he has arrived, without giving to the parties the notice required by the Thirty-first Rule in Chancery.

BILL IN EQUITY to restrain the defendants from maintaining a dam across Ware River, and thereby flowing back the water upon the wheels of the plaintiff's mill.

An injunction was granted *ex parte* by *Foster,* J., enjoining the defendants "from raising the water to such a height as in the ordinary stages of the river will cause back water on the

plaintiff's wheels," and was served on the defendants December 4, 1867. On December 31, the plaintiff applied to the court for an attachment against the defendants, alleging that they continued to flow back the water upon his wheels in violation of the injunction. In pursuance of the order of notice issued upon this application, the parties, on January 6, 1868, appeared before *Foster*, J., and filed the following agreement:

" The case may be sent to Phineas Ball, Esquire, special master, &c., who shall determine and report at what height the water can be raised at the defendants' dam without setting back water upon the plaintiff's wheels, except in time of freshets and when the river is unusually swollen by rains. Also, whether, since the service of the injunction, the defendants have raised the water so as to set it back upon the plaintiff's wheels, except at such times. The defendants agreeing that the water shall be kept by them at the height so fixed during the pendency of the injunction, and further, that if it should be found that it has been raised beyond such height since the injunction was served, except by inevitable accident, they will pay the costs of this application and hearing. And the plaintiff being entitled, if he sees fit, to apply further to the court in regard to the matter of contempt. And, on the coming in of the engineer's report, either party may introduce further evidence in regard to whether the defendants have, since the service of the injunction, raised the water by means of their dam so as to flow it back on the plaintiff's wheels. And the engineer may receive any competent evidence to ascertain whether, since the service of the injunction, the defendants have, by means of their dam, flowed the water back on the plaintiff's wheels. And as soon as the engineer goes on to commence his investigation, he may cause the water to be drawn down off the plaintiff's wheels, if in his judgment it can be done. The defendants agreeing further that, until the engineer shall come on to commence his investigation, they will keep the water of the river down to the point where Noah W. White was accustomed to keep it, and in case any question shall arise between the plaintiff and the defendants as to whether the water is at any time above such point, it shall be

determined by Noah W. White. And it is understood that the engineer is expected to proceed with the above matter at once, or as soon as can reasonably be done, if either party requires."

On the same day on which the foregoing agreement was filed, the judge entered the following order: " This cause coming on to be heard on the order that the defendants show cause why an attachment should not issue against them for a contempt in disobeying the injunction of the court, and the parties appearing and consenting thereto, It is Ordered, that the cause be committed to Phineas Ball, Esquire, as a special master and commissioner, who shall determine and report at what height the water can be raised at the defendants' dam without setting back water upon the plaintiff's wheels, except in case of freshets and when the river is unusually swollen by rains. Also, whether, since the service of the injunction, the defendants have raised the water so as to set it back upon the plaintiff's wheels, except at such times. The master to hear any competent evidence which either party may offer. Upon the coming in of his report, either party is to be at liberty to offer further evidence in regard to the point whether the defendants have raised the water so as to set it back on the plaintiff's wheels, since the service of the injunction. The plaintiff is to be at liberty to make future application to the court in regard to the matter of contempt. This order being made in view of the agreement of the parties herewith filed."

On May 22, 1868, the parties made a second agreement as follows: " The parties agree that Phineas Ball, Esquire, shall indicate the height to which the dam of the defendants may be maintained until the said Ball shall finally determine the height said dam may be kept at as required by the order of the court; the defendants to so temporarily cut down said dam to the extent and at the time said Ball shall determine." And the master thereupon, on June 27, made the following order: " In pursuance of the foregoing matter of agreement in relation to the cutting down temporarily of the defendants' dam, it is hereby directed and ordered that the defendants temporarily cut or otherwise take down the dam eighteen inches, to two inches above the

points this day set at each end of the dam, said dam to be taken down on or before the 11th day of July."

On January 30, 1869, the master filed his report, the material part of which was thus : " I find that the old Noah White dam, now owned by the defendants, may be raised, within the terms of the order of the court, eighteen inches above the top of the old cap log forming the overflow to said White's dam as it at present lies at the westerly end thereof. Upon the question ' whether since the service of the injunction the defendants have raised the water so as to set it back upon the plaintiff's wheels,' I find that the defendants negligently and knowingly raised the water, when the river was not unusually swollen by freshets or rains, so as to set it back upon the plaintiff's wheels, a portion of the time between the date of the service of the injunction on December 7, 1867, and the issuing of the order of the court " of January 6, 1868. Full opportunity had been given to the defendants to be heard on all matters submitted to the master.

On February 6, 1869, the cause came on for hearing upon the question of contempt, before *Chapman*, C. J., but neither the defendants nor their solicitors were present; and the chief justice ordered that the report of the master " be accepted and confirmed in so far as it finds the defendants guilty of the alleged contempt," and that the defendants be notified personally to appear on February 13. On that day the parties appeared; the defendants moved that the order accepting and confirming the report might be vacated; and the hearing was adjourned to February 18, when the parties again appeared, before *Ames*, J., and the master filed a petition for leave to amend his report as follows :

" By the wording of the first finding, the word ' dam ' in said report is unintentionally used in the sense of the word ' water,' which error makes the report neither conform to the order of the court, nor to the facts elicited by the levels and investigations of the master. I therefore desire to amend said finding as follows, to wit: ' I find that the water at the old Noah White dam, now owned by the defendants, may be raised, within the terms of the order of the court, eighteen inches above the top of the old

cap log, forming the overflow to said White's dam, as it at present lies, at the westerly end thereof.' "

The motion was allowed, and the report recommitted, whereupon the master immediately gave oral notice to the parties, who were then present in court with their counsel, that he would hear the case in five minutes from the time of the notice. The defendants filed with him a protest that the time allowed was not sufficient, and prayed for further time, but the master, notwithstanding, proceeded to hear the case at the time appointed; and on the same day he returned his report, having amended it exactly in accordance with his petition, and the plaintiff moved that it should be accepted. The defendants thereupon filed exceptions to the report, specifying " that the master had passed upon matters not submitted to him under the order of the court; had found and reported that the defendants had knowingly and wilfully raised the water by means of the dam mentioned in said order; had not allowed sufficient time to the defendants previous to the hearing before him " on the recommitment; " had not given them sufficient notice of the hearing; and that his findings were not warranted by the evidence before him." The plaintiff applied for an attachment against the defendants, contending that they had disobeyed the injunction and violated the agreements. The defendants denied that they had done either.

The questions of law arising in the case, upon a statement substantially as above given, were reserved by *Ames,* J., for the consideration of the full court.

*C. Brimblecom & P. E. Aldrich,* for the plaintiff.

*T. L. Nelson,* for the defendants. The agreements entered into by the parties had the effect to dissolve the injunction; *Anon.* 15 Ves. 174; and are not to be enforced against the defendants by the process of attachment. The master's report is indefinite, uncertain, and not in conformity to the order of reference. The notice given to the defendants of the hearing before the master was insufficient. 31st Rule in Chancery, 14 Gray, 358.

AMES, J. The injunction to restrain the defendants from flowing back the water against the plaintiff's wheels was served

upon them early in December 1867, and on the last day of that month the plaintiff moved for an attachment against them, for an alleged violation of the injunction. At the time appointed for the hearing upon the motion, the parties entered into the first agreement, and the substance of that agreement was afterwards put into the form of an order of the court. This agreement does not appear to us to amount to a waiver of the injunction, or of the complaint against the defendants for their alleged disobedience of its terms. On the contrary, it points out a mode of settling the question whether, as a matter of fact, the defendants had raised the water above the prescribed limits. To settle this question, an engineer was appointed, as a special master, who was also to decide and report to what height the defendants could raise the water at their dam without setting it back against the plaintiff's wheels. His report on the first of these two questions was not to be final, but either party was to be at liberty to introduce further evidence upon that subject; a form of expression which clearly points to a trial on the merits of the application. His determination upon the second question apparently was to furnish the rule which was to govern the subsequent conduct of the defendants so long as the injunction should continue in force; the plaintiff being at liberty to make further application to the court in regard to the matter of contempt; that is, as we suppose, to make a new application in case of any renewal of the cause of complaint. Whatever may be the effect of this agreement and the order of the court upon it as to any subsequent disobedience of the injunction, it still leaves the parties at issue upon the question whether the defendants had up to that time violated the order of the court, and it looks to a trial by the court of that question, in which either party was at liberty to introduce further evidence after the coming in of the master's report. The second agreement appears to have been wholly prospective in its operation, and does not amount to a waiver of any previous rights or claims.

It appears to us that the master's report, as amended, is not open to exception on the ground that it is "indefinite, uncertain

and not in conformity to the order of reference." He has reported that the defendants had "negligently and knowingly" raised the water. In so doing, it cannot be said that he has assumed to judge of their motives, or to ascribe to them any mischievous design, but he merely informs the court that the raising of the water was not the result of any accident, and did not happen without their knowledge, but on the contrary was produced by their operations and their voluntary acts. The amendment was made with the permission of the court, for the purpose of correctly presenting the result at which he had already arrived, and it was not a matter in which notice to the defendants, or their personal attendance, could be of any practical value or importance to them. It was not sent back to him for a rehearing, but to enable him to correct an error of expression, and required no new evidence or argument. *Gardner* v. *Field*, 5 Gray, 600. *Webber* v. *Orne*, 15 Gray, 351.

The report of the master is to be accepted, not as conclusive evidence that the defendants were in contempt at the date of the first application, because, by the terms of the agreement, either party is at liberty to introduce further evidence on that subject; it is, however, part of the evidence for consideration in the case.

The first application for an attachment for contempt is therefore to *Stand for hearing.*