NATIONAL FOLDING-BOX & PAPER CO. v. DAYTON PAPER-NOVELTY CO.

(Circuit Court, S. D. Ohio, W. D. February 4, 1899.)

**1. EQUITY PRACTICE—REPORT OF MASTER—POWER OF COURT TO PERMIT WITH-DRAWAL.**

The report of a master in chancery, made and filed in accordance with equity rule 83, does not become property in which a party has a vested right, being merely advisory to the chancellor; and it is within the general equity powers of the court, which are not affected by rule 83, to re-refer such a report after it has been filed, or to permit the master to withdraw it for correction or amendment. When such action is taken, the powers of the master, originally derived from the court, are renewed for the purposes for which the re-reference is made or the withdrawal permitted.

**2. SAME—RECONSIDERATION OF REPORT BY MASTER—NOTICE TO PARTIES.**

Where a master is permitted to withdraw his report for correction or amendment, he should not reverse his former findings as to the facts or law without notice to the parties. A reconsideration by him of the case on its merits after a report filed is within the spirit of rule 75, requiring notice.

**3. SAME—EFFECT OF IRREGULAR ACTION BY MASTER.**

A master, after having filed his report, asked and was granted leave to withdraw it for correction. He afterwards filed a second report, in which many of the findings of the former report, both of fact and law, were reversed. *Held* that, no notice of a reconsideration having been given the parties, the second report could not be permitted to stand, nor, in view of the subsequent action of the master, could the first report be accorded the advisory weight usually given to a master's report, but that the master should be required to report the evidence taken by him, and the issues thereon would be tried de novo by the court.

On a Rule against a Master to Show Cause.

Walter D. Edmonds, for complainant.
Wood & Boyd, for defendant.

TAFT, Circuit Judge. This cause comes on for hearing upon a rule issued against the special master heretofore appointed herein, requiring him to show cause why his final report filed on May 13, 1898, should not be restored to the files of the court, and why the report of said master filed on the 23d of June, 1898, as a substitute in lieu of the report of May 13th, should not be canceled or withdrawn from the files of the court.

This is a bill for an infringement of a patent, in which an interlocutory decree was entered by Judge Sage, finding the validity of one of the claims of the complainant's patents, and its infringement by

the defendant, and referring the cause to the special master herein to take evidence as to the extent to which defendant infringed the patent claim, the profits made by it, and the damages suffered by complainant. Upon the 13th of May, 1898, after full hearing of evidence and argument of counsel, the master made a report, with his reasons for his conclusions, finding that the damages due to the complainant were $14,214.40. The report was duly filed in the clerk's office, with the exceptions to the same. After the report had been filed nearly a month, the master, on June 6, 1898, becoming convinced that he had made mistakes in the report, applied to this court for leave to withdraw the report from the files of the cause, for the purpose of correcting or amending the same. He stated at the time that he thought he had made a mistake in his report, and that in certain respects he had gone beyond the inquiry directed. The application was granted as follows: "Leave is given to the master, upon his own application, to withdraw report for amendment." On the 23d of June, the master filed another report in lieu of that of May 13th. In the later report the master reduces his finding of profits received by the defendants from $14,204.40 to $7,353.77. The master was directed, in the decree, to receive testimony on the contention of complainant that the accounting should be for the entire profits resulting to the defendant company from the manufacture, use, and sale of the paper boxes by which complainant's patent was infringed, and on the counter contention that the accounting should be limited to the profits resulting to defendant from the new element covered by the second claim, i. e. the claim found in the decree to be valid and to have been infringed. In his first report, the master found that the entire profits from sale of the boxes were due to the patented improvements thereof. In his second report the master found that none of the profits were due to such patented improvements. I have examined both reports, and it is clear that by his second report the master has reversed his findings of fact in several very important issues presented, and also that he has reversed several important conclusions of law.

The counsel for the complainant, in pressing the present motion for an order, has permitted his enthusiasm in the cause to lead him into expressions of criticism upon the master which are not justified. The question presented is only one of equity practice, and there is no room, under the circumstances as they present themselves to the court, for phrases that cannot but give the controversy a personal color. The tone of the brief and affidavits towards the master filed by counsel for the complainant jars upon the ear of one who knows the master, his high standing, his long experience, his absolute integrity and earnest desire to reach just conclusions.

The contention of counsel for the complainant is, first, that the court had no jurisdiction to refer the report back to the master for amendment after he had filed it. The argument is that the course of the master is fixed by the eighty-third equity rule, which reads as follows:

"The master, as soon as his report is ready, shall return the same into the clerk's office, and the day of the return shall be entered by the clerk in the

order book. The parties shall have one month from the time of filing the report, to file exceptions thereto; and if no exceptions are within that period filed by either party, the report shall stand confirmed on the next rule day after the month is expired. If exceptions are filed, they shall stand for hearing before the court, if the court is then in session, or if not, then at the next sitting of the court which shall be held thereafter by adjournment or otherwise."

It is said that the procedure thus enjoined deprives the court. of power and jurisdiction to permit the master to withdraw the report, and that complainant, by virtue of the rule, had acquired a vested right in the report, akin to the right of property, of which he could not be devested except by due process of law. To quote the words of the brief, counsel says: .

"Complainants assert that by reason of rule 83, as well as the constitutional inviolability of property rights, neither this ex-master, who had become no more than any other citizen in his relations to this case, nor any circuit judge, nor any other person, had lawful authority to withdraw the said report at all, but particularly not for the purpose of substituting another, of substantially different tenor."

It would seem to be a somewhat liberal, and rather novel, construction of the fifth and fourteenth amendments to the federal constitution which would class the interest that a litigant has in preventing a re-reference of a case to a master, for amendment of his filed report, as property which it was the intention of the constitution to protect from arbitrary or discretionary action by the legislature or the court. It will probably be conceded that within the term a court may, of its own motion, set aside the judgment or decree which it has made, on the ground of error or mistake. Now, judgments do come within some definitions of property, but reports of masters in chancery are nothing but advice to the court by one of its officers. No process can issue upon them. They are not choses in action. They are but steps in the progress of the cause to the decree of the court. It would be strange, therefore, if a court might within the same term exercise its discretion to set aside one of its own decrees as erroneous, and yet might not authorize one of its officers, though occupying only an advisory capacity, upon his own application, and statement that he had made a mistake, to review his advisory findings, and revise them, without violating that due process of law enjoined by the fifth amendment to the constitution of the United States. Nor is there anything in the eighty-third equity rule which prevents action of the court upon the report of the master, summary, discretionary, or otherwise. That rule simply prescribes the course of the master in respect of filing the report, and of the parties in presenting exceptions; but it leaves the course to be taken by the court to be determined by practice in the high court of chancery in England as it was in 1842.

It is insisted that the master, when he filed his report, became functus officio, and could not thereafter amend his proceedings, at a time when he was clothed with no official authority. This is the significance of the references to the "ex-master" of which counsel's brief is so full. It will hardly be denied that the authority which the master exercised in his first report came wholly from the court.

It would seem clear that the court which gave him original authority might renew that authority. Re-references and recommitments are not so unusual as to require citations of precedents to justify them, and yet they can only be made on the theory that the court which originally conferred authority may renew it. The order of this court giving the master leave to withdraw his report for amendment necessarily gave him the authority to make an amended report, and he was as much master of the court when he made the second report as when he made the first.

Mr. Justice Bradley, in Thomson v. Wooster, 114 U. S. 104, 112, 5 Sup. Ct. 788, speaking for the supreme court, said that the English edition of Daniell's Chancery Practice, published in 1840, contained the best exposition of the practice of the high court of chancery at the time the equity rules were adopted by the supreme court, and that to this book reference should be had when questions of federal equity practice arose which were not covered by the equity rules. In the edition of Daniell referred to, on page 961, is the following:

"Although the usual course by which a review of a master's report is to be procured is by taking exceptions to it, there are many cases in which the court will direct the master to review his report without requiring exceptions to be taken, or, if they are taken, will direct it to be reviewed upon grounds independent of those laid by the exceptions; and sometimes, as we have seen, the court will direct a master to review his report in order to afford a party an opportunity for taking in objections to the draft, as a foundation for exceptions. A reference back to the master, to review a report which has not been excepted to, may be made upon the hearing for further directions, and is frequently so made when the court is not satisfied with the master's finding, as where the master has not found sufficient facts for the court to found its judgment upon. So, also, if the master has exceeded his authority, it will either direct him to review his report, or take no notice of his finding."

See, also, 2 Beach, Mod. Eq. Prac. § 713.

In Mosher v. Joyce, 6 U. S. App. 107, 112, 2 C. C. A. 324, 325, 51 Fed. 441, 444, Mr. Justice Jackson, then circuit judge, speaking for the court of appeals of this circuit, said:

"In respect to such matters as the recommittal of accounts or a reference back to a master, the chancellor exercises a very large discretion, and is not to be put in error in his action upon such motions except upon a very clear showing of merits, and in the absence of negligence."

The right and power of the court to permit the master, upon his own application, to withdraw his report for amendment, would seem to be sustained by the following Massachusetts authorities: Heywood v. Miner, 102 Mass. 466; Webber v. Orne, 15 Gray, 351; Gardner v. Field, 5 Gray, 600.

Dismissing from the discussion the question of the power of the court to make the order which it did, we come to the question of the propriety of the order and the action of the master under it. When the master came to the court, and said that he had made a mistake in his report, and that he had not conformed to the decree in certain respects, the court did not suppose that the master expected to review all his findings of fact and conclusions of law upon the merits. The master must, of course, be acquitted of the slightest desire to mislead the court when he applied for leave to withdraw the report; and yet the statement that was made was so incidental as to give

the court an impression that the mistakes to be corrected were of such comparatively unimportant character that they might be corrected without notice to the parties. I have read the two reports, and I find that the latter reverses the findings of fact and conclusions of law of the former on the most important issues of the reference. After the master had made and filed a report, he ought not, upon a re-reference for amendment, to reverse his rulings on the evidence and law without giving the parties notice. Such a re-reference is to be assimilated to the granting of a rehearing by the court after decision, in which the practice always is to give the parties a full opportunity to rediscuss the merits, before an order is made reversing the former ruling. Equity rule No. 75 is very explicit as to the duty of the master to give notice to the parties of the proceedings in the cause before him, and it seems to me that a reconsideration by the master of the case upon its merits after report filed is within the spirit of that rule. There seems to be a rule expressly requiring notice in a case of this kind, under the Massachusetts equity practice. Heywood v. Miner, 102 Mass. 466. Certainly, had the court fully understood the scope of the amendment to the report proposed, it would have expressly required notice to parties, and an opportunity for reargument before the master. What, then, is to be done? The last report should not be allowed to stand, for the reasons above given. Nor ought the first report to be restored, because its findings and conclusions ought not, in view of its author's subsequent action, to be accorded the advisory weight which masters' reports are usually given both in the court of first instance and in the appellate court. Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894; The Cayuga, 16 U. S. App. 577, 8 C. C. A. 188, 59 Fed. 483; Beach, Mod. Eq. Prac. § 711, and cases cited. The court might refer the case back to the master for a rehearing after argument, but this would entail considerable extra expense upon the parties. The most expeditious mode of settling the rights of the parties without prejudicing either is to make an order re-referring the cause to the master, with directions to report to the court all the evidence upon damages and profits which he has taken, without reporting any findings of fact or conclusions of law. An order will therefore be made, modifying the interlocutory decree already made to this extent. The court and counsel will, of course, have an opportunity to examine the two reports of the master for use in the argument and consideration of the case; but the issues must be argued de novo, and without according to either report the weight it would have, were the cause to be heard on exceptions to the same. The cause will be set for hearing on Saturday, February 25th, at 11:30 a. m., unless the date is inconvenient to counsel, in which case the court will fix another day.