GERALDINE M. CARLEY, administratrix, vs. FREDERICK F. CARLEY.

Suffolk.    November 6, 1958. — February 5, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Equity Pleading and Practice*, Master: settlement of report, objections to report, supplemental report, recommittal. *Rules of Court.*

The first paragraph of Rule 90 of the Superior Court (1954) requires a master to give the parties an opportunity to suggest alterations in the draft of a supplemental report which makes material changes in the original report, and, upon finally settling the draft of such a supplemental report, to give the parties an opportunity to file objections thereto; but the procedure stated in the rule need not be followed with respect to a supplemental report making no material change in the original report. [511]

Where, long after the filing of a master's report and after confirmation of the report, the suit was recommitted to the master for more specific findings on certain matters and the master filed a supplemental report containing new or supplementary findings of a material nature without giving the defendant an opportunity to suggest alterations and to file objections pursuant to the first paragraph of Rule 90 of the Superior Court (1954), the defendant was entitled to have an interlocutory decree confirming the supplemental report and the final decree reversed and to have the suit recommitted again in order to provide him with such an opportunity with respect to the findings in the supplemental report, even though he had failed to file or, after filing, to press objections to the findings in the original report. [512]

BILL IN EQUITY, filed in the Superior Court on March 8, 1954.

The defendant appealed from interlocutory and final decrees entered on January 20, 1958, by *Smith*, J.

*Frank D. Branca*, (*Francis X. Cuddy* with him,) for the defendant.

*Timothy J. McInerney*, for the plaintiff.

WHITTEMORE, J.   This is a bill in equity originally brought by a tenant in common of real estate, and now prosecuted by the administratrix of his estate, against a cotenant for an

accounting of rents collected from one of the two apartments into which the house was divided, and a proportionate share of the resulting profits. The defendant has appealed from the denial of a motion to recommit the master's original and first and second supplemental reports, from the interlocutory decrees which denied a motion to discharge the report and the reference, and confirmed the original and first and second supplemental reports, and from the final decree.

The master found that the original plaintiff (hereinafter the plaintiff) and the defendant, who were brothers, together with a sister, were, by inheritance from their mother, the owners of a two apartment house in Dorchester from the mother's death on December 3, 1941, to May 27, 1954; that in this period the second floor apartment had been occupied by the defendant; that the first floor apartment was rented to others; that the plaintiff had sought and been refused occupancy of this apartment; that he had requested an account, and been told by the defendant to wait until the estate was settled; that no accounting was made; and that the plaintiff was entitled to one third of the rental of the first floor apartment at $25 per month from December 3, 1941, to May 27, 1954.

The master also found that in May, 1947, the defendant was appointed guardian for the sister and that "from May, 1947, he took over the charge of the property." The specific findings about the occupancy of the first floor apartment were, in substance, these: It was occupied by a Mrs. Wylie until her death in September, 1946; after Mrs. Wylie's death, a daughter of the defendant and her husband, who in August, 1946, had rented a room in the apartment, continued to live there and occupied the whole apartment; this was allowed by the defendant without consulting the plaintiff; the plaintiff inquired of both the defendant and his sister "several times about occupying the first floor apartment, and each time was refused permission to so occupy."

The report stated: "A number of bills were submitted . . . but I have disallowed them all as either not having

been proved to be necessary, not having been proved to have been paid by the defendant, or if incurred they were for the benefit of the defendant, and in no case was the plaintiff consulted in connection with any of the alleged expenditures."

The report recited that the defendant's objections were filed therewith. The briefs inform us that no stenographer had been appointed under Rule 90 of the Superior Court (1954).

The report was recommitted on June 22, 1955, "for the purpose of setting forth the subsidiary facts upon which are based the conclusions or ultimate facts disallowing all of the bills submitted, and especially with reference to those relating to necessary carrying charges on the property in question." The master's supplemental report responding to this order was filed June 14, 1956, and stated only: "I have again examined my notes and find there is no credible evidence to support the claims."

The defendant's motion to discharge the report and reference, for failure to comply with the order of June 22, 1955, and for failure to list the bills showing the expenses of the property and on other grounds, filed June 27, 1956, was denied after hearing March 1, 1957, and on that date a decree was entered overruling the exceptions and confirming the master's report and supplemental report. The defendant's appeal on March 19 was "from the interlocutory decree confirming the master's report and supplemental report." The defendant's objections to the report are not included in this record.

When the case came on for hearing on a motion for entry of final decree, an interlocutory decree was entered on November 26, 1957, recommitting the case to the master to report, on or before December 18, 1957, upon the testimony and evidence theretofore presented to him, more specific findings, in respects stated by the order, as to the defendant's control of the first floor apartment, and his exclusion of the plaintiff therefrom, the rents collected by the defendant and whether "(c) the defendant made proper and reasonable expenditures in connection with the management

of said first floor apartment, and, if so found, to find the amount thereof."

The second supplemental report, thereafter filed, found that the defendant was in control of the first floor apartment beginning December 3, 1941; and had excluded the plaintiff from participation in the control of that apartment from January 1, 1942, to May 27, 1954, and had made no accounting as he had promised; that the third co-owner while not excluded from control did not exercise any control of the apartment; that the defendant collected all the rents from January 1, 1942, through May, 1954, a total of $3,725; and that "C. A number of bills were submitted to me during the hearings, but I have disallowed them all as either not having been proved to be necessary, not having been proved to have been paid by the defendant, or if incurred they were for the benefit of the defendant. There was no credible evidence presented to me that any reasonable expenditures were made in connection with the management of the said first floor apartment, and, accordingly, I find the amount of such reasonable expenditure to be none." The last sentence is the only part of this paragraph not included in the original report.

An order was entered on January 7, 1958, continuing the case to give counsel an opportunity to file motions, it having appeared by the statements of both counsel that the master had not "complied with the procedure called for under Rule 90" in respect of the second supplemental report.

On January 14, 1958, the defendant moved to recommit the reports to have annexed all of the exhibits relating to real estate taxes, water bills, and fire and general liability insurance premiums paid by the defendant and any and all expenditures in connection with the management of the property and "further for the reason that the master has failed, neglected and refused to comply with the orders of the court and the Superior Court rules." The court on January 20, 1958, entered interlocutory decrees which denied this motion and confirmed the second supplemental report and a final decree which ordered the defendant to pay to

the plaintiff $1,233 with interest from the date of filing of the bill.

We rule that the intent of the first paragraph of Rule 90 of the Superior Court (1954)[1] is that the parties shall have an opportunity to suggest alterations in any material part of the report whether it appears in the first report or in any supplemental report. Manifestly, the opportunity to make suggestions and to file objections is of equal importance whenever new facts or conclusions are stated, or when matters which were included in the first report, which may be material, are deleted. Conversely if the supplemental report makes no material alteration in the original report there is no occasion to conform to the procedure stated in the rule. *Gardner* v. *Field,* 5 Gray, 600. *Webber* v. *Orne,* 15 Gray, 351. *Heywood* v. *Miner,* 102 Mass. 466. See *National Folding-Box & Paper Co.* v. *Dayton Paper-Novelty Co.* 91 Fed. 822, 825–826 (C. C. S. D. Ohio).

We think that the rule was applicable to the second supplemental report. The findings of the original report did not justify charging the defendant with all the rent prior to May, 1947. It was inferential that the sister had had some charge of the property prior to that time, and that she might have received some or part of some of the rent payments; it was conjectural whether the plaintiff had sought and been excluded from occupancy prior to September, 1946, when Mrs. Wylie died. The original report was ambiguous in respect of expenditures which may have been made in the course of managing the only apartment which was the subject of the demand for an accounting. The second supplemental report contained new findings in respect of control and receipt of rents and a supplementary finding in respect of expenses.

[1] "When the master has prepared a draft copy of his report, he shall furnish the parties with copies thereof and notify them of a time and place when and where they may attend and suggest such alterations as they may think proper; upon consideration whereof, the master shall finally settle the draft of his report, and give notice thereof to the parties, furnishing them with copies of the report in so far as it differs from the draft report; whereupon ten days shall be allowed for bringing in written objections thereto, briefly and clearly specifying the matters objected to and the cause thereof, which objections shall be appended to the report."

We hold that recommittal was required because the defendant was deprived of his right to make suggestions to the master in respect of the facts newly found. The original report was filed March 15, 1955. The second recommittal, on November 26, 1957, came two years and nearly nine months later. The absence of a stenographic record made important the opportunity, particularly after so long an interval, to recall to the master's attention relevant evidence, and to ask him to check his notes of testimony against those of counsel. The defendant asserts in his brief that the uncontradicted evidence was that the sister collected the rents from January 1, 1942, until 1947. This assertion, outside the record, in no way imports the asserted fact; it does, however, direct attention to an issue of fact in respect of which the opportunity to make suggestions was important.

The defendant is entitled also to an opportunity to object to the finding that there was no credible evidence of any reasonable expenditures in connection with the management of the first floor apartment. The recommittal order of November 26, 1957, made that a contestable issue regardless of prior proceedings. We surmise that the master cast his original report on the premise that the defendant, as a tenant who was in control of the entire premises and who had the use of one of the apartments, and who was not asked to account, or could not be forced to account, for the value of his own use and occupation, was the sole beneficiary of payments for taxes and other necessary expenditures. We assume that a failure to file objections to the original findings in respect of expenditures, or, if they were filed, a failure to press them, meant that the defendant, prior to the order of recommittal, could not contest the report in this respect. We recognize also that the same premise appears to underlie the second supplemental report. But that is not controlling to bar presentation of the issue of whether such bills, if paid, were expenditures in connection with the management of the first floor apartment. Recommittal at any stage was within the discretion of the

court (*Minot* v. *Minot*, 319 Mass. 253, 258), and the unsatisfactory findings in respect of the expenditures fully justified recommittal, even if the defendant as the case then stood had no right to insist on such action or on a review of relevant issues of law.

The principles of accounting between cotenants which may be applicable to such objection as may be made to the second supplemental report, although touched on in the defendant's brief, are not squarely presented. For that reason we do not undertake to state them and intend no suggestion as to the merits of such objections as may be made.

If on recommittal, the defendant shall, in accordance with Rule 90, object to the finding newly added to the report by the last sentence of paragraph C, the master shall append to his report all the bills which were in evidence which are relevant to the objections and shall include in his report a full statement of them, that is, their dates, the amounts, the obligations represented, whether paid and by whom, and, as to each, whether deemed beneficial only to the defendant and why. The inclusion of such a statement in the original report, and in any event pursuant to the specific directions of the Superior Court decrees would have avoided some if not most of the delay, now nearly four years, since the filing of the first report.

The interlocutory decrees of January 20, 1958, and the final decree are reversed. The motion of recommittal of January 14, 1958, is to be allowed in the Superior Court.

*So ordered.*