JOHN DIANGELES *vs.* NICHOLAS SCAUZILLO.

Suffolk.    November 17, 1932. — June 29, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Unlawful Interference.    Agency,* Agent's duty of fidelity.    *Trust,* What constitutes.

A manufacturing baker employed a salesman to take the place of a former employee by an oral contract which did not include an agreement that the salesman, on termination of his employment, would not enter the employment of a competitor.  The employer gave no list of customers to the salesman, but the former employee showed him a book in which were written names and addresses of customers, and he copied them in a book furnished by himself, and not by the employer.  He continued in the employment for eight years, during which many old customers were lost and several new ones were procured by him, the business increased and the territory was extended; but he acquired no information respecting the employer's business in the nature of trade secrets, and his knowledge of his customers and their requirements involved no special skill but was acquired by going over his routes and by soliciting new customers.  At the end of the eight years, he left the employment and became employed by a competitor of his former employer to work in the same territory, taking with him his book, in which, without having been directed to do so by his former employer and not for any improper purpose, he had written names and addresses of customers.  He refused on demand to deliver to his former employer information concerning new customers acquired by him during the eight years.  The former employer thereupon by a suit in equity sought to enjoin him from making use of his list and to require him to deliver it to the plaintiff, and damages.  Although the plaintiff, after leaving the defendant's employ, delivered bread to some customers without stating whose bread it was, he did not tell any of them that he was selling the plaintiff's bread.  *Held,* that

(1) In the circumstances, the defendant's conduct in entering the new employment and seeking the patronage of customers who became such in the course of the previous employment was not a breach of any

duty which he owed to the plaintiff; his knowledge concerning such customers was personal to the defendant and was not surrendered to the plaintiff;

(2) The mere fact that the defendant originally had learned from the former employee names and addresses of customers, which were not trade secrets, did not deprive him of the right, after he left the plaintiff's employment, to seek the patronage of persons to whom he had delivered bread while working for the plaintiff;

(3) The mere fact that the defendant sold bread to some customers without stating whose it was did not entitle the plaintiff to relief;

(4) The defendant should not be enjoined from making use of his list of customers in his new employment: he was entitled to make use of such information as part of his ordinary experience gained in his work for the plaintiff, and he was not precluded from doing so, in the circumstances, because he had made a written memorandum of that information while employed by the plaintiff;

(5) The plaintiff was not entitled to have turned over to him by the defendant the book of names and addresses;

(6) The plaintiff was not entitled to be furnished by the defendant with information in regard to the customers obtained by the defendant, nor to damages by reason of the defendant's failure to furnish it: such information, being a part of the defendant's experience gained in his work for the plaintiff, and not being confidential, was not held by the defendant upon trust for the plaintiff.

BILL IN EQUITY, filed in the Superior Court on December 19, 1930, and described in the opinion.

The suit was referred to a master. Material facts found by him and stated in a report which was confirmed, and a final decree entered by order of *F. T. Hammond*, J., are described in the opinion. The plaintiff appealed from the final decree.

*M. B. Ulin*, (*M. N. Abrahamson* with him,) for the plaintiff.

*O. Segal*, for the defendant, submitted a brief.

FIELD, J. This is a suit in equity. The plaintiff, a manufacturing baker, sought by his bill to enjoin the defendant, a former salesman, from holding himself out as an agent and employee of the plaintiff, from representing that the merchandise sold by him is manufactured by the plaintiff, from using the name of the plaintiff or of his business in connection with the sale of merchandise, and from making use in any way of the list of names and customers now in his possession, the property of the plaintiff. The plaintiff

also sought an order that the defendant deliver to him "a list containing the names and addresses of all persons, firms or corporations with whom the defendant did business while acting as the agent and employee of the plaintiff," an accounting, and damages for the defendant's representations that he was the agent and employee of the plaintiff after his agency had terminated, and for his refusal "to furnish to the plaintiff the list of customers obtained by him and to whom he sold merchandise while in the employment of the plaintiff." The case was referred to a master who made a report which was confirmed. A final decree was entered that the defendant pay to the plaintiff the sum of $16.28 with costs, and the plaintiff appealed.

The facts found by the master include the following: The plaintiff was for many years a manufacturing baker who sold bread at his shop and also to outside customers from a delivery wagon. Prior to May, 1922, he employed one Serignano as a salesman to deliver bread to outside customers. On or about May, 1922, the plaintiff by an oral contract employed the defendant, who had never been a salesman of bread, to take the place of the former employee to deliver bread and the defendant continued in such employment as the plaintiff's only salesman until November 15, 1930, when he left the plaintiff's employment and went to work for another baker. The defendant went over the same routes and into the same territory selling the bread of his new employer to many of the customers to whom he had formerly sold the plaintiff's bread, and the plaintiff's business on these routes fell off and the plaintiff suffered financial loss.

The defendant "acquired no information respecting the plaintiff's business in the nature of trade secrets," and his knowledge of the plaintiff's customers and their requirements involved no special skill, but he "acquired a knowledge of plaintiff's customers on said routes by going over the said routes and by soliciting new customers." He used this knowledge in selling his new employer's bread. But he had talked with some of the plaintiff's customers immediately

after he left the plaintiff's employment and had told them that he did not have any more of the plaintiff's bread but was selling his new employer's bread. And he did not hold himself out to customers as employed by the plaintiff and did not tell any of them he was selling the plaintiff's bread, though he delivered bread to some of them without stating whose bread it was.

After the defendant left the plaintiff's employment, the plaintiff, who knew the addresses of only five of his customers, sent his son to sell bread to them and to any other customers whom he could locate, but the son was unable to find any of the others to whom the defendant had sold and delivered bread while employed by the plaintiff. The plaintiff employed men to follow the defendant for the purpose of finding out to whom he was delivering bread and to ascertain the addresses at which it was delivered. These men wrote down the addresses at which the defendant called to deliver bread for his new employer, but did not take the names of the customers for the reason that in each of several of the houses more than one family lived and, within three weeks after the defendant left the plaintiff's employment, furnished to the plaintiff a list containing these addresses.

The plaintiff's former employee, Serignano, had a list of the plaintiff's customers on the route in question which was written in a book furnished by the employee. When the defendant began work for the plaintiff this former employee showed him his book in which were written names and addresses of customers and the defendant copied these names and addresses in a book furnished by himself and proceeded to deliver bread to them. During the defendant's employment many old customers were lost and several new ones were procured by him, the business increased and the territory was extended. At the time the defendant left the plaintiff's employment he had a small book in which he kept names of customers to whom he sold the plaintiff's bread and the book contained the names of the old customers and of the new customers procured by the defendant. On November 25, 1930, the plaintiff made an

oral demand on the defendant for the names and addresses of the customers to whom he had sold the plaintiff's bread and on December 1, 1930, made a written demand therefor. On December 5, 1930, the defendant gave to the plaintiff a sheet of paper on which were written names and addresses purporting to be names and addresses of old customers. But the plaintiff's agent afterwards used this list and was able to find only one or two of them, since they had moved away or were dead. The names and addresses on this list were some of the names and addresses given by the plaintiff's former employee to the defendant at the time he entered the plaintiff's employment. At the time the defendant gave the list to the plaintiff he had knowledge of the new customers procured by him during his employment by the plaintiff and then refused, and continues to refuse, to furnish the plaintiff with the names and addresses of the new customers procured by him during such employment.

The master found that the defendant was indebted to the plaintiff in the sum of $16.28, the excess of the amount received by the defendant from the plaintiff's customers for the sale of bread over the amount paid the plaintiff by the defendant.

The decree was right.

The amount for which the defendant is required to account is in accord with the facts found. And, apart from the matter of the list of customers, hereinafter considered, the defendant has not made any illegal use of knowledge acquired by him when working for the plaintiff or illegally interfered with the plaintiff's business. The defendant did not agree that he would not enter the employment of a competitor of the plaintiff and, in the absence of such an agreement, his conduct in entering such employment and "seeking the patronage of business acquaintances who became such in the course of a previous employment" was not the breach of any duty which he owed to the plaintiff. It was neither a breach of trust nor a breach of any agreement implied in the contract of hiring. The defendant's "acquaintance with the customers" was personal to him

and was not surrendered to the plaintiff. *Padover* v. *Axelson*, 268 Mass. 148, 151. *May* v. *Angoff*, 272 Mass. 317, 320. The defendant's knowledge of the plaintiff's customers and their requirements was not derived from confidential information. The master's findings that the defendant "acquired no information respecting the plaintiff's business in the nature of trade secrets," that the defendant "acquired a knowledge of plaintiff's customers on said routes by going over the said routes and by soliciting new customers," and that "many of the old customers were lost" during the eight years the defendant had worked for the plaintiff indicate that, though originally the defendant had learned names and addresses of customers of the plaintiff from a book kept by a former employee, this information was merely a starting point for the defendant, and his knowledge of the plaintiff's customers at the time he left the plaintiff's employment had been derived largely from his work as a salesman. The mere fact that the defendant had originally learned names and addresses of customers — which were not trade secrets — from a former employee did not deprive him of the right, after he left the plaintiff's employment, to seek the patronage of persons to whom he had delivered bread while working for the plaintiff. In this respect the case is no stronger for the plaintiff than was *May* v. *Angoff*. And there is no finding, and no basis for an implication in the findings, that the defendant after leaving the plaintiff's employment falsely represented that he was selling the plaintiff's bread. Since the defendant's acquaintance with the plaintiff's customers was personal to him, and he had a right after leaving the employment of the plaintiff to make use of such acquaintance in selling another baker's bread, the plaintiff is not entitled to relief on the ground that the defendant delivered bread to some customers without stating whose bread it was, in the absence, as here, of proof of further facts showing that by such silence the defendant falsely represented that he was selling the plaintiff's bread and thereby misled those customers to buy the bread so delivered as the plaintiff's bread.

Possession by the defendant of a book in which he had written a list of names of the plaintiff's customers, which he had learned in part from a book kept by the former employee and in part from his own work as a salesman for the plaintiff, is not a ground for the issuance of an injunction against the use by the defendant of this list of names or for the recovery of damages by the plaintiff. In the cases already referred to, where former employers were denied relief, the employees derived their knowledge of their employers' customers in much the same manner as did the defendant in the present case, though after leaving their former employments these employees relied solely on their memories. In *Padover* v. *Axelson*, 268 Mass. 148, 151, however, the court refers to the fact that no "written or printed list of the plaintiff's customers was copied," and in *May* v. *Angoff*, 272 Mass. 317, 320, to the fact that the employees "returned the books containing names of customers of the plaintiff, and it does not appear that the lists were copied or that the defendants had any knowledge of the plaintiff's customers unless they remembered them." See also *Commonwealth Laundry Co.* v. *Daggett*, 283 Mass. 79, 81, 82. But in each of these cases there is reference also to the fact, or to the absence of a finding to the contrary, that, as appeared in the present case, no information confidentially acquired respecting the plaintiff's business was used by a former employee, and in *Padover* v. *Axelson* (page 152) the court distinguished *Colonial Laundries, Inc.* v. *Henry*, 48 R. I. 332, on the ground that the employees in that case were in possession of confidential knowledge. In view of this fact the court in the Rhode Island case, where there was no written list of customers, held that the employer was not "entitled to less protection when the names on the list are carried off in the employees' memories." Page 338. Whether on the same facts we should have reached the same conclusion need not be decided. Here information not confidential but reduced to writing is involved.

The significance of the possession by an employee of a written list of his former employer's customers, as dis-

tinguished from the retention of their names in memory, in any particular case, where the information is not confidential, lies in the fact that the employer is the owner of the written paper, though wholly or partly prepared by the employee, in the fact that the list of customers was copied or written out in violation of a duty to the employer, or, perhaps, in the fact that the employee, in carrying off the written list, is carrying off something more than experience gained by him in the business. The present case is not within any of these categories. The book does not belong to the plaintiff. It does not appear to have been furnished by him or to be a part of his system of accounts. See *Cali* v. *Caliri*, 254 Mass. 488. Nor does it appear that the book was kept by the defendant by the express or implied direction of the plaintiff or was essential to the business. The facts found indicate ˙that the book was in the nature of a personal memorandum kept by the defendant on his own initiative to aid him in the performance of his work as a salesman for the plaintiff. The names of the plaintiff's customers were not copied from a list, except as stated with respect to those copied from a list of the former employee, and it does not appear that they were written in the book in violation of any express or implied instruction of the plaintiff, surreptitiously, or for any disloyal purpose, such as preparing for future competition with him. See Am. Law Inst. Restatement: Agency, § 396; *Robb* v. *Green*, [1895] 2 Q. B. 315. See also *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd.* 239 Mass. 158, 165; *Merryweather* v. *Moore*, [1892] 2 Ch. 518. The source of the information was the defendant's experience. So far as appears the names could have been successfully carried in memory. Indeed it is not unlikely that without the book the defendant would have remembered the names of the customers on his routes to whom he was in the habit of delivering bread. It cannot be inferred reasonably that the possession of the book gave the defendant any materially greater power to interfere with the plaintiff's business than he would have had by relying solely on his memory. The defendant is entitled

to make use of his information in regard to the plaintiff's customers as part of his ordinary experience gained in the business (Mechem, Agency, [2d ed.] §§ 1211, 1212), and he is not precluded from doing so because, perhaps unnecessarily, while employed by the plaintiff he made a written memorandum thereof in the circumstances shown by the findings. *Padover* v. *Axelson*, 268 Mass. 148, *May* v. *Angoff*, 272 Mass. 317, and *Commonwealth Laundry Co.* v. *Daggett*, 283 Mass. 79, do not require a different conclusion.

It follows from what has been said that the plaintiff is not entitled to have the book kept by the defendant turned over to him. He is not entitled to it as his property nor is he entitled to it in order that, to any extent, the defendant may be deprived of information therein contained.

The question remains whether the plaintiff is entitled to have the defendant furnish him with information in his possession. Though it does not appear definitely that the defendant gave to the plaintiff all the names and addresses of customers which he had copied from the book kept by the former employee, it cannot be inferred that the defendant did not furnish the plaintiff upon his demand with all the names and addresses so obtained which are written in the book in the defendant's possession or are within his knowledge. And the plaintiff is not entitled to be furnished with information in regard to the customers obtained by the defendant. This information being a part of the defendant's experience gained in the business, and not being confidential, is not held by the defendant upon trust for the plaintiff. Doubtless, while the defendant was employed by the plaintiff, the plaintiff could have instructed him as a part of his duty while employed to inform the plaintiff of the names and addresses of customers to whom the defendant was delivering bread. But it does not appear that the defendant while employed failed to obey any instructions given. After the termination of the employment the plaintiff could not command the services of the defendant. His duty and responsibility to the plaintiff ended with his agency. See Mechem, Agency, (2d ed.) § 1235. Since the defendant was under no duty after

his employment ceased to furnish the plaintiff with the names and addresses of customers obtained by him, the plaintiff is not entitled to damages for his refusal to do so.

*Decree affirmed.*