WOOLLEY'S LAUNDRY, INC. *vs.* JOSEPH H. SILVA.

Suffolk.    October 4, 1939. — November 28, 1939.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Contract,* Of employment.    *Unlawful Interference.    Trade Secret.*

A laundry proprietor who furnished a "route man" with a list of the names and addresses of the employer's customers on his route, "in the expectation, not expressed" to the employee, that he "would not disclose or use the same" for his personal gain, did not impart confidential information to the employee and was not entitled later to have him enjoined from soliciting and accepting business from those customers for his own account after he had left the employment without taking away the list except by memory.

BILL IN EQUITY, filed in the Superior Court on September 22, 1938.

The defendant appealed from a final decree entered by order of *Baker,* J.

*J. L. Murphy,* (*L. J. Fisher* with him,) for the defendant.

*G. A. McLaughlin,* (*C. S. McLaughlin* with him,) for the plaintiff.

COX, J.  The plaintiff, in this bill in equity, seeks to have the defendant enjoined from soliciting the business of any of its known customers and to have determined its damages sustained by reason of the alleged wrongful conduct of the defendant.  The case was referred to a master whose report was confirmed by interlocutory decree, and a final decree was entered permanently enjoining the defendant (1) from soliciting the business of customers whose names and ad-

dresses were communicated to him by the plaintiff while in its employ and who were served by him while so employed; (2) from accepting and receiving laundry for cleansing from customers of the plaintiff served by him while in its employ whose names and addresses were communicated to him by it; and (3) from interfering in any way, directly or indirectly, with the contractual relations existing between the plaintiff and its customers whose names and addresses were communicated to him while in its employ, the names of said customers, sixty in number, being listed in the decree. The defendant appealed from the final decree. The evidence is not reported.

The master found that in 1925 or 1926 the defendant, who had had no previous experience in the laundry business, entered, as a solicitor, collector, and delivery man, the employ of the father of the present president and manager of the plaintiff, who was then conducting a laundry business. The defendant was furnished with a list of names and addresses of the customers of the father in a certain territory and was assigned to a route covering that territory. It was a part of his duty to solicit new customers. About eight or ten years before the bringing of this suit the father died and the plaintiff corporation was formed. It took over the laundry business as it had been conducted by the father, and the defendant "was taken over from the old business as one of its employees." His duties remained the same. Since its organization, the plaintiff has maintained lists of the names and addresses of its customers and a collection and delivery service by means of its trucks. In 1936 the plaintiff acquired another laundry route, added it to the territory then being served by the defendant, and furnished him with the names and addresses of the route customers. In 1938 a "route man" of the plaintiff was discharged and his route was added to the territory of the defendant who was furnished by the plaintiff with the names and addresses of the customers upon that route. The names and addresses of its customers are essential to the success of the plaintiff's business. The father, while he conducted the laundry business, and the plaintiff furnished

their employees who performed the duties of "route men," including the defendant, with the names and addresses of their customers, "in the expectation, not expressed to said 'route' man, including the defendant, that they, including the defendant, would not disclose or use the same for their personal gain except as such employees." Sometime in 1938 the plaintiff's president and manager, because of an apprehension that the defendant contemplated engaging in the laundry business on his own account, requested him to execute and deliver to the plaintiff a written contract defining his duties as an employee and informed him that it would be necessary for him to execute and deliver such a contract if he wished to remain as an employee. The defendant refused to make such a contract, or any written contract, and left his employment in September, 1938. At that time he informed the president and manager that he intended to engage in the laundry business on his own account and that he claimed as his own such of the customers as had been served by him while in the employment of the plaintiff. He engaged in the laundry business on his own account and is now serving customers in the same territory covered by him while employed by the plaintiff and at the time he left its employ. He solicited for his own account the customers previously served by him, and, as a result of such solicitation, he is now serving for his own account and financial benefit customers whose names and addresses were furnished to him by the father and by the plaintiff. The surnames of forty-seven such customers are detailed in the report, together with the names of thirteen customers whose names and addresses were solicited and secured by the defendant while employed by the father and the plaintiff, all of whom were customers of the plaintiff and as such were served by the defendant up to the time he left the plaintiff's employ. The master found the amount of the average weekly gross receipts of the defendant's business, but stated that he was unable to find what proportion of these receipts had resulted solely from the business obtained by the defendant from the customers named, and that, other than the evidence of the gross receipts, the

plaintiff offered no evidence tending to show the measure of damage, if any, sustained by it as a result of the defendant's conduct. There is no finding that the defendant made any misrepresentations to any of the customers or that, in soliciting them, he made use of any list that had been furnished to him. In fact, at the argument it was agreed that the defendant took no list away with him beyond what he carried in his head.

The question to be decided is whether the defendant is wrongfully making use of information in part originally acquired through lists furnished by his former employer but now apparently no longer needed by the defendant, inasmuch as he carries the names in his memory. If no lists were involved, we are of the opinion that the plaintiff could not prevail, and we think this follows from the decisions in *Padover* v. *Axelson*, 268 Mass. 148, *May* v. *Angoff*, 272 Mass. 317, *DiAngeles* v. *Scauzillo*, 287 Mass. 291. It is to be observed that the plaintiff is not attempting to restrain the defendant from violating any express term of a contract, compare *Walker Coal & Ice Co.* v. *Westerman*, 263 Mass. 235, and cases cited, *Southern New England Ice Co.* v. *Ferrero*, 295 Mass. 446, and cases cited; nor is it seeking to have the defendant enjoined from using any list, as such, or to require him to return any list or to divulge the names on such list to the plaintiff. See *DiAngeles* v. *Scauzillo*, 287 Mass. 291.

Out of the mere general relationship of employer and employee certain obligations arise, including that which precludes an employee from using, for his own advantage or that of a rival and to the harm of his employer, confidential information that he has gained in the course of his employment. *Aronson* v. *Orlov*, 228 Mass. 1, 5, and cases cited. "This rests upon the implied contract, growing out of the nature of the relation, that the employee will not after the termination of his service use information gained during the period of his employment to the detriment of his former employer." *Aronson* v. *Orlov*, 228 Mass. 1, 5, and cases cited. *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd.* 239 Mass. 158. *Padover* v. *Axelson*, 268 Mass.

148, 151. *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277. *Robb* v. *Green* [1895] 2 Q. B. 1; *S. C.* [1895] 2 Q. B. 315. Upon the facts found by the master no implied contract could arise out of the employment merely because the names and addresses of customers were furnished "in the expectation, not expressed to said 'route' man, including the defendant, that they . . . would not disclose or use the same for their personal gain except as such employees." *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277, 281. On the other hand, the public and the individual have an interest in every person carrying on his trade or occupation freely. Interference with individual liberty of trade, if there is nothing more, is contrary to public policy, and contracts restraining freedom of employment can be enforced only when they are reasonable, not wider than is necessary for the protection to which the employer is entitled, and not injurious to the public interest. *Club Aluminum Co.* v. *Young,* 263 Mass. 223, 225, 226, and cases cited. As was said in the case just cited, on page 226: "The use of the information thus obtained [confidentially] amounted . . . to a breach of duty. The use of trade or business secrets gained through employment may properly be made the subject of restrictive agreements. In this class fall also agreements not to use lists of customers and not to entice old customers away by any form of solicitation. Knowledge confidentially gained in the course of employment may be made the subject of restrictive agreement and acts in derogation of such a contract will be restrained. But an employer cannot by contract prevent his employee from using the skill and intelligence acquired or increased and improved through experience or through instruction received in the course of the employment." In the absence of an express contract containing restrictive covenants as to the use of lists of customers, the employer, if he seeks to enjoin an employee from making use of the information contained in such lists, must, of necessity, resort to the allegation, as in the case at bar, that an implied term of contract of employment has been violated, or that there has been a breach

in respect of the duty owed by the employee to the employer.

In the case at bar was the information that was furnished to the defendant by the plaintiff by way of the names and addresses of its customers confidential? The authorities do not appear to be in accord on this question. It has been held that, where a laundry driver is given a list of customers on his route and while so employed acquires knowledge of and access to all of these customers, he cannot be enjoined after leaving his employment from utilizing his knowledge and soliciting the patronage of the customers. Such a list was held not to be a trade secret. *Fulton Grand Laundry Co.* v. *Johnson,* 140 Md. 359. See *City Ice & Cold Storage Co.* v. *Kinnee,* 140 Wash. 381; *El Dorado Laundry Co.* v. *Ford,* 174 Ark. 104; *Newark Cleaning & Dye Works, Inc.* v. *Gross,* 97 N. J. Eq. 406; *Lewitter* v. *Adler,* 101 N. J. Eq. 74; *Boosing* v. *Dorman,* 148 App. Div. (N. Y.) 824, affirmed 210 N. Y. 529; *S. W. Scott & Co. Inc.* v. *Scott,* 186 App. Div. (N. Y.) 518; *American Cleaners & Dyers* v. *Foreman,* 252 Ill. App. 122; *Grand Union Tea Co.* v. *Dodds,* 164 Mich. 50; *Jewel Tea Co.* v. *Grissom,* 66 S. D. 146.

On the other hand, it has been held that where employees, upon entering their employment, were given the names of certain regular customers upon whom to make periodical calls for the solicitation and collection of laundry to be done by the employer, although the employees copied no list of customers but simply carried their names and addresses in their memories, there being no contract forbidding the employees to engage in the business, nevertheless they would be enjoined from soliciting the customers named after leaving their employment. *Colonial Laundries, Inc.* v. *Henry,* 48 R. I. 332. In that case it was conceded by the defendants that, if they had taken away a written list of customers or had surreptitiously procured the names, the injunction would have been proper, and the court said, at page 338: "We fail to see why complainant is entitled to less protection when the names on the list are carried off in the employees' memories." See *Empire Steam Laundry* v. *Lozier,* 165 Cal. 95, where, however, the employee's

contract provided that he would not solicit laundry business from any of his employer's customers either for himself or as an employee of anyone else, and where the court said (page 99) that it was among the duties of the employee to "solicit new business and keep a complete and confidential list of all the customers"; and see *New Method Laundry Co.* v. *MacCann*, 174 Cal. 26, where the employee's duties required him "to keep confidentially, in a list specially prepared by the plaintiff, all the names and addresses of plaintiff's customers" (page 29). *Morrison* v. *Woodbury*, 105 Kans. 617.

No effort has been made to collect all of the cases. It is worthy of note, however, that, in *Witkop & Holmes Co.* v. *Boyce*, 61 Misc. (N. Y.) 126, cited with approval in many of the cases that support the proposition that an employee may be enjoined from making use of the names of customers furnished him by his employer, although the court said (page 132) it was of the opinion that, "independently of any express contract between the parties," equity will restrain the employee, nevertheless, in that case, there was a written agreement that the employee, after leaving his employment, would not engage in the same line or a similar line of business and would not furnish to others lists of customers or information of any kind or nature pertaining to his employer's business. See *Boosing* v. *Dorman*, 148 App. Div. (N. Y.) 824, affirmed 210 N. Y. 529.

An examination of the authorities leads to the conclusion that no general and invariable rule can be laid down where an employee, after leaving his employment, has made use of the information obtained by him through lists furnished by his employer, and that the question turns upon whether in a given case the list was confidential, and, if so, whether that fact should be submerged in the interests of free competition. The questions to be determined in each case are whether the knowledge or information, the use of which the employer seeks to enjoin, is confidential, and whether, if it be confidential in whole or in part, its use ought to be prevented. We are of the opinion that, upon the facts disclosed in the case at bar, the information furnished the

defendant was not confidential. It is a matter of common knowledge that a business that involves the delivery of merchandise or the collection of goods upon which work is to be done is not conducted surreptitiously. It may be said that, as a general rule, there is little occasion for any legitimate business to be conducted in secret. Whether it is of significance, as has been said in some of the cases, that, in general, an employer's customers are discoverable by observation of a route driver, nevertheless the whereabouts of customers may be ascertained, and, in the case at bar, it is not unreasonable to assume that some of the customers of the plaintiff were at one time served by some one other than it or its predecessor in business. It is true that as a part of the plaintiff's business, and in its practical management, it was necessary for the defendant and other drivers to know who the customers were and where they lived or had their places of business, and it would not have been difficult for the plaintiff to have imparted this knowledge under conditions that made it confidential. This was not done. The unexpressed intentions of the plaintiff cannot bind the defendant. The defendant commenced work for the plaintiff's predecessor in business in 1925 or 1926, and continued until September, 1938, and thirteen of the customers named in the decree were obtained by his own efforts. He must be credited with enough intelligence to enable him, in that period, to memorize the names and addresses of the other forty-seven. The conclusion that he did this is warranted from the further fact that he took no list of names away with him and that he has been soliciting all of the sixty customers since he left his employment. The employer has no property right as such in the names of his customers. The value of a list depends in great measure upon the good opinion of the goods that the employer may sell or the work that he may do for his customers. It is undoubtedly true that a delivery route for certain commodities has a sales value. This is usually so because some one can be found who is willing to pay something for the opportunity of serving the customers in the hope that he may continue to hold their patronage.

We are of the opinion that the decree in the case at bar should not have been entered.  As was said in *Padover* v. *Axelson*,. 268 Mass. 148, at page 151: "No written or printed list of the plaintiff's customers was copied, and no information confidentially acquired as to the details of the plaintiff's business was used by them [employees].  These appellants solicited the former customers of the plaintiff, but there was no breach of any duty owed the plaintiff in this.  They could use their knowledge of the trade.  Their acquaintance with the customers, their skill and intelligence as salesmen were not surrendered to the plaintiff."  And in the case of *May* v. *Angoff*, 272 Mass. 317, at page 320, it was said: "They [the employees] returned the books containing names of customers of the plaintiff, and it does not appear that the lists were copied or that the defendants had any knowledge of the plaintiff's customers unless they remembered them.  There is no finding that any information confidentially acquired respecting the plaintiff's business was used by them."  In *DiAngeles* v. *Scauzillo*, 287 Mass. 291, it was said at page 297: "Here information not confidential but reduced to writing is involved."  The defendant does not come within the categories described in the last case cited, where at pages 297 and 298 the court said: "The significance of the possession by an employee of a written list of his former employer's customers, as distinguished from the retention of their names in memory, in any particular case, where the information is not confidential, lies in the fact that the employer is the owner of the written paper, though wholly or partly prepared by the employee, in the fact that the list of customers was copied or written out in violation of a duty to the employer, or, perhaps, in the fact that the employee, in carrying off the written list, is carrying off something more than experience gained by him in the business."  In *Peerless Pattern Co.* v. *Pictorial Review Co.* 147 App. Div. (N. Y.) 715, an employee was enjoined from making use of the knowledge or information gained from or contained in his former employer's original compilation or collection of names and addresses of the merchants with whom the employer had contracts

for the sale and distribution of merchandise. It was not charged that the employee had made out or copied any lists of customers. Upon appeal the decree was reversed. The court said, at page 717: "All that clearly appears is that he [the employee] undertook to use in his new employment the knowledge he had acquired in the old. This, if it involves no breach of confidence, is not unlawful, for equity has no power to compel a man who changes employers to wipe clean the slate of his memory."

The decree is reversed and a new final decree is to be entered dismissing the plaintiff's bill with costs.

*Ordered accordingly.*