AMERICAN WINDOW CLEANING COMPANY OF SPRINGFIELD,
MASS. *vs.* LOUIS COHEN & another.

Hampden.     September 27, 1961. — November 17, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Unlawful Interference. Trade Secret. Agency,* Agent's duty of fidelity.
*Equity Jurisdiction,* Plaintiff's clean hands. *Equity Pleading and Practice,* Master: recommittal.

In a suit in equity by a window cleaning company against one who had
been its president and a director and had been discharged as its manager and against a competing corporation which he had formed immediately after his discharge and which had acquired many former regular
customers of the plaintiff, a conclusion that the defendants had used
confidential information in soliciting such customers was not warranted
where it did not appear that, although the individual defendant remembered the plaintiff's prices, the frequency of service required by its
customers and the specific needs and business habits of particular customers, any contract of the defendant corporation with any former
regular customer of the plaintiff had been made with the aid of information copied by the individual defendant from the plaintiff's ledger cards.
[199–200]
There was unfair interference with a pre-contract relationship between a
window cleaning company and a customer for whom it had done work
occasionally by one who had been manager of the company but who
had been discharged and by a competing corporation formed by the
former manager immediately after his discharge where it appeared that,
before leaving the company's employ and on its behalf, he had submitted a bid to the customer and had subsequently prepared a revised
bid which was submitted by the company after his discharge, that soon
after his discharge he solicited the customer's business for his corporation and was shown by the customer a copy of the company's figures
"for his use in preparing his own bid," and that his corporation then
submitted a bid $5 less than the company's bid and obtained the customer's business.   [198, 201]
The mere fact that the manager of a company was summarily discharged
did not preclude the company from recovering damages from him and
a competing corporation formed by him immediately after his discharge
for unfair interference with a business relationship between the company and one of its customers.   [201]
Allowance of a motion for a final decree in a suit in equity following confirmation of a master's report did not preclude a subsequent recommittal
of the case to the master for a further finding.   [202]

BILL IN EQUITY, filed in the Superior Court on July 29, 1959.

An interlocutory decree recommitting the report of a master and a final decree after hearing on the master's reports were entered by *Lurie, J.*

*Robert D. Moran*, for the defendants.

*Irving M. Cohen*, for the plaintiff.

WHITTEMORE, J.   The defendants ask us to reverse the final decree of the Superior Court which adjudged that certain competitive conduct by the defendant Cohen was unlawful and that the defendants are liable in damages. There was no injunctive relief.   At issue is the extent to which a former corporate officer and employee, in the absence of an agreement not to compete, may solicit the corporation's customers and use information acquired while associated with it.

We summarize facts from the master's report.   Cohen was voted out of office, as president and a director, and discharged as manager of the window cleaning portion of the plaintiff's business, at a stockholders' meeting on July 7, 1959.   Cohen's brother-in-law, Edward L. Simonoff, had been treasurer and a director.   Their mother-in-law, Stella Radner, was the third director.   The 100 shares of stock had been held: thirty-eight shares by the mother-in-law; thirty-one shares by Simonoff's wife, Lillian; and thirty-one shares by Cohen or his wife, Eunice.   Simonoff managed the maintenance portion of the plaintiff's business. Differences had arisen between the brothers-in-law over the management of the corporation; Cohen had separated from his wife and the ownership of the thirty-one shares was in dispute.   Contentious or abortive corporate meetings were held from time to time in the first six months of 1959; Cohen in presiding at some meetings acted "unwisely and improperly."   By agreements dated July 7, 1959, the mother-in-law and Eunice Cohen (Eunice claiming and purporting to sell thirty-one shares) agreed to sell stock to the Simonoffs.   Weekly instalment payments due under one of these contracts were thereafter made directly by the corporation.

There was no evidence of a note or a contract for repayment of these weekly amounts and they were not intended as a charge against Simonoff's weekly compensation. "This amounted to a purchase of sufficient shares of stock of the plaintiff by . . . Lillian Simonoff to give her control, financed by the corporation in a manner not fully determinable from the evidence, without the consent of the defendant Cohen."

Cohen said at a meeting of July 17 that he intended to go into business, would solicit the plaintiff's customers in Springfield, and would try to hire the plaintiff's employees. The plaintiff, under Cohen's supervision, had kept on ledger cards a record of regular customers which contained their names, the dates of service, the name of the employee who did the work, the time required, the type of work, and the charge.

"It was . . . an advantage to any person rendering window cleaning service and making estimates therefor to know prices which had been charged, the frequency of service, and to have had experience in the amount of cleaning to be done for each customer in order to give satisfaction. It was helpful with certain stores to know how often window displays were changed, how often window signs were changed, the degree of window care, and whether to clean glass doors. The purpose was to satisfy the customer. This knowledge the defendant Cohen had from his association with the plaintiff."

Cohen, discharged as of July 11, formed the defendant corporation and through it began to compete on July 20. The defendant corporation acquired some fifty-one former regular customers of the plaintiff (for which the damages, if recoverable, were $413.13) and secured the business of some of its irregular customers, that is, those for whom service was performed less often than monthly, or only when requested. The plaintiff in the prior forty or fifty years of its window cleaning business had been successful in retaining the bulk of its customers, notwithstanding considerable competition. It was a business which could not

be conducted surreptitiously. "It was comparatively easy to discover the customers of any particular window cleaning concern. . . . The plaintiff failed to establish that . . . Cohen took any records or copies of records of the plaintiff." In a required summary of evidence, subsequent to the report, the master stated that there was evidence that Cohen, before leaving, had copied some of the plaintiff's records but that there was no evidence from which he could draw a conclusion as to the information copied "nor that it was other than information which he already had or had supplied as manager of the window cleaning department of the business." "Cohen did know the customers . . . and the prices charged, as well as the type and frequency of work done . . . . The plaintiff [except in the one case hereafter discussed] did not establish the extent to which . . . Cohen . . . was assisted in obtaining work by the knowledge which he had gained . . . except as to names of customers and prices charged." Two employees of the plaintiff became employees of the defendant corporation.

Cohen, before leaving the plaintiff's employ, had, for the plaintiff, submitted a bid to Gilbert & Barker Manufacturing Company, an irregular customer for whom the plaintiff had done work when requested two or three times in the preceding five years. He had also subsequently prepared for the plaintiff a revised bid which Simonoff had submitted after Cohen's discharge. Cohen on July 13 solicited the business for the defendant corporation, and was shown by the customer a copy of the plaintiff's figures "for his use in preparing his own bid." The defendant corporation then submitted a bid for $2,380. This was $5 less than the plaintiff's bid and the defendant corporation obtained the employment.

The master concluded that the plaintiff had failed to show the use of any confidential information by Cohen in his competition with the plaintiff; Cohen had violated no trust or confidence and consequently neither Cohen nor the defendant corporation had acted improperly in their competition; Cohen had not acted improperly in soliciting em-

ployees of the plaintiff, nor taken advantage of confidential information in so doing. The master also stated his conclusion that the plaintiff did not come into court with clean hands.

The judge on the subsidiary findings ruled that the plaintiff "did not come into court with unclean hands," and that "the conduct of . . . Cohen two days after his lawful discharge . . . was for purposes of advancing his own interests and that of the new corporation . . . and that . . . Cohen procured by improper means information about the plaintiff's business." The final decree awarded damages for the loss of the Gilbert & Barker contract and, in subparagraph 2, for interference with regular customers.

It is established that a discharged employee, without the use of a list belonging to his former employer, may solicit the latter's customers. *Padover* v. *Axelson,* 268 Mass. 148. *May* v. *Angoff,* 272 Mass. 317, 320. *Woolley's Laundry, Inc.* v. *Silva,* 304 Mass. 383, 389, and cases cited. "[N]o general and invariable rule can be laid down . . . the question turns upon whether in a given case the list was confidential, and, if so, whether that fact should be submerged in the interests of free competition." *Ibid.*

There is no basis in the findings or evidence for a conclusion that the defendants used confidential information in soliciting the plaintiff's regular customers. Remembered information as to the plaintiff's prices, the frequency of service, and the specific needs and business habits of particular customers was not confidential. *Padover* v. *Axelson,* 268 Mass. 148, 151. *DiAngeles* v. *Scauzillo,* 287 Mass. 291, 298–299. Restatement 2d: Agency, § 396. Compare *New England Overall Co. Inc.* v. *Woltmann, ante,* 69, 76–79. See *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277, 280–283, and cases cited; *Junker* v. *Plummer,* 320 Mass. 76.

The master, in stating that the plaintiff failed to establish that Cohen took records or copies of records, in effect ruled insufficient to support a contrary conclusion the evidence, stated in the summary, that Cohen had copied some

records.  If, as may have been intended, there is in the subsequent statement of the evidence an implied later finding that Cohen did copy records, there is no finding of what was copied.  The statement at its broadest does no more than imply the master's conclusion that some information, undescribed, which Cohen already had in his head, or had supplied, was copied.  Reasonable inferences from the findings were for the court, *Foot* v. *Bauman,* 333 Mass. 214, 219, and the inference would be justified that Cohen used such copied information as he had.  We assume that if, for any contract, he used information available to him only through a copy of the plaintiff's file, its property, his competition in making that contract was unfair.  We do not, however, find justified the inference that any particular contract or contracts with regular customers were made with the aid of copied information or that Cohen had made a copy of any information about the particular customers.  Perhaps the master based his conclusion that Cohen took advantage of no confidential information in part on the assumption that, although Cohen used copied information, it was not confidential because it was only what "he already had or had supplied."  See *DiAngeles* v. *Scauzillo,* 287 Mass. 291, 297–299.  (Defendant could keep and use a book of customers' names which he had compiled in part from a list kept by a former employee and in part in the course of his own work and which "[s]o far as appears . . . could have been successfully carried in memory.")  We do not reach that issue for the reasons stated.

That Cohen was a director did not make information, otherwise properly acquired, confidential.  It was in his employee capacity that Cohen acquired the information about customers.  The information was of the kind which would be used by anyone working for his living in the window cleaning business — one in which Cohen was experienced and free to work.  *Padova* v. *Axelson,* 268 Mass. 148, 151–152.  It is not suggested that a former director may not compete.  See *Lincoln Stores, Inc.* v. *Grant,* 309 Mass. 417, 423 (competition, even while a director, not necessarily barred); 13 Am. Jur., Corporations, § 999.

343 Mass. 195                                    201

American Window Cleaning. Co. of Springfield, Mass. v. Cohen.

The Gilbert & Barker contract was in different aspect. To be sure, this was not a case of competitive bidding for a contract to be awarded to the lowest bidder, and the principle is inapplicable on which the judge relied (Restatement: Torts, § 759) that ascertainment of a rival's bid for such a contract is improper and unjustifiable. Speaking generally, the prospective customer was free to tell a solicitor of his business what was the best price so far offered, and the solicitor would be free to use information so received. But the master's express findings show that Cohen appropriated to his own purposes his work done for the plaintiff. While employed, he had established a pre-contract relationship between the plaintiff and an irregular customer which in due course was likely to ripen into a contract. Knowledge of this was special corporate information. Interference with that relationship, immediately upon discharge (*Fidelity Appraisal Co.* v. *Federal Appraisal Co.* 217 Cal. 307, 315) and with the use of the plaintiff's bid, we hold was unfair. Cohen, in the circumstances, in using the plaintiff's figures as the basis of his own, stood little better than if he had used a copy of the figures carried away by him. See *DiAngeles* v. *Scauzillo,* 287 Mass. 291, 297–298. "[C]onsidering all the circumstances, . . . [this conduct was] unfair." Restatement 2d: Agency, § 396, comment on cl. b.

That Cohen was summarily discharged as a result of a shift in stock ownership, facilitated by a possible misuse of corporate funds, did not justify an otherwise unjustifiable attack on the plaintiff's customer relations. Remedy for hurt to Cohen's stock interest, if any, lay in the courts. The corporate changes, understandably provocative to Cohen, were not relevant circumstances in judging the legality of his responsive acts. It is unnecessary to characterize the action of the plaintiff, its officers and stockholders. That conduct did not bar the plaintiff from asserting its rights against unlawful conduct by Cohen and the defendant corporation. *New York, N. H. & H. R.R.* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, 482. *Braga* v.

*Braga,* 314 Mass. 666, 672. Compare *Weintraub* v. *L & F Realty Co. Inc.* 331 Mass. 711, 714.

There was no error in recommitting the case for a finding of damages in the Gilbert & Barker transaction (found as $596.25), notwithstanding allowance of a motion for final decree. That action, of course, was not the equivalent of a final decree. *Fusaro* v. *Murray,* 300 Mass. 229, 230. The prior confirmation of the report established the facts found as the facts of the case, *Foot* v. *Bauman,* 333 Mass. 214, 219, and it was the duty of the judge to see that the final decree was such as was required by those facts and proper inferences therefrom. *Ibid.* Recommittal at any stage was within the court's discretion. *Carley* v. *Carley,* 338 Mass. 507, 512–513.

The interlocutory decree of recommittal is affirmed. The final decree is to be modified by striking therefrom subparagraph 2, and by stating the damages in the final paragraph at $596.25, with appropriate interest and costs. As so modified, the final decree is affirmed.

*So ordered.*