# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | |
|---|---|
| **VENTURE EXPRESS, INC.,** | ) |
| | ) |
| Plaintiff/Appellee, | ) **Rutherford Circuit No. 35679** |
| | ) |
| VS. | ) **Appeal No. 01A01-9704-CV-00172** |
| | ) |
| **MICHAEL E. ZILLY, Ind., ZILLY** | ) |
| **TRANSPORTATION SERVICES,** | ) |
| **INC., and ZILLY SERVICES, LLC,** | ) |
| | ) |
| Defendants/Appellants. | ) |

**FILED**

**February 20, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

### APPEAL FROM THE CIRCUIT COURT OF RUTHERFORD COUNTY
### AT MURFREESBORO, TENNESSEE
### THE HONORABLE JOSEPH DANIEL, JUDGE

**W. LEE CORBETT**
**DAVID F. LEWIS**
**CORBETT CROCKETT & LECKRONE**
Nashville, Tennessee
Attorneys for Appellants

**DAVID W. KIOUS**
Murfreesboro, Tennessee
Attorney for Appellee

**REVERSED AND DISMISSED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Defendants Michael E. Zilly, Zilly Transportation Services, Inc., and Zilly Transportation Services, LLC, appeal the trial court's judgment awarding $78,000 to Plaintiff/Appellee Venture Express, Inc. We reverse the judgment because we conclude that the evidence does not support the trial court's ruling that Zilly breached his fiduciary duty to Venture Express.

## I. Factual and Procedural History

Zilly began working as a driver for Venture Express in 1981. After a series of promotions, Zilly was named president of Venture Express in 1990. Sometime in 1995, however, Venture Express's owner, Jimmy Allen, became dissatisfied with Zilly's job performance. In July 1995, Allen met with Zilly to discuss improving his job performance. At the meeting's conclusion, Allen informed Zilly that he would reevaluate Zilly's performance within thirty days.

One Sunday in August 1995, Allen read in the newspaper that Zilly had formed a new corporation named Zilly Transportation Services, Inc. According to Allen, when confronted, Zilly admitted that he planned to go into business for himself in about six months. Zilly, on the other hand, maintained that he never intended to leave Venture Express and that he only filed the corporate charter for Zilly Transportation Services because he feared he would be terminated from Venture Express. In any event, Allen immediately terminated Zilly upon learning of the newly-formed corporation.

While president of Venture Express, Zilly was responsible for maintaining a relationship with Venture Express's various customers and for ensuring that they remained satisfied with Venture Express's services. Zilly's responsibilities included a customer named Calsonic Yorozu Corporation. At the time of Zilly's termination, Venture Express was completing the second year of a three-year contract with Calsonic. The contract established a rate for the three-year term of the contract and automatically renewed each year but could be terminated if either party provided thirty days written notice.

2

Within days of his termination, Zilly began soliciting Calsonic's business on behalf of his new corporation, Zilly Transportation Services. Zilly knew the rate being charged Calsonic by Venture Express, and he submitted a bid which quoted a more favorable rate. Zilly and Calsonic subsequently entered into a contract, effective October 2, 1995, for Zilly to service a portion of the business formerly handled by Venture Express. Venture Express would have earned between $78,000 and $87,000 in profits for these services had it completed the remaining year of its contract with Calsonic.

Venture Express subsequently brought this action against Zilly, Zilly Transportation Services, Inc., and Zilly Transportation Services, LLC, contending, inter alia, that Zilly breached his fiduciary duty as an officer of Venture Express by forming Zilly Transportation Services and by obtaining a contract with Calsonic to perform a portion of the services formerly provided by Venture Express. After conducting a bench trial, the trial court ruled that Zilly had breached his fiduciary duty to Venture Express, and the court entered a judgment for $78,000 in favor of Venture Express. This appeal followed.

## II. Corporate Officer's Fiduciary Duty to Corporation

This court previously has recognized the high degree of loyalty owed by officers to their corporation:

> Corporate officers stand in a fiduciary relation to the corporation and while occupying such position they must act in the utmost good faith. They are not permitted to deal with the corporation or its assets for their own private gain and cannot deal for themselves and for the corporation at one and the same time . . . . If they do so act in violation of their trust they must account for any profits made by use of corporate assets.

Central Bus Lines v. Hamilton Nat'l Bank, 239 S.W.2d 583, 585 (Tenn. App. 1951); accord Gillespie v. Branham, 337 S.W.2d 689, 691-92 (Tenn. App. 1959). This fiduciary duty also prohibits officers from engaging in a competing business to the detriment of their corporation. Heffernan v. Heffernan, Ballinger, Pounds, & Yarbrough, Inc., No.

3

02A01-9504-CH-00080, 1996 WL 512639, at *4 (Tenn. App. Sept. 11, 1996); 18B Am. Jur. 2d Corporations § 1712 (1985).

The foregoing duty extends up until the very last day of the officers' terms of office. Hayes v. Schweikart's Upholstering Co., 402 S.W.2d 472, 482 (Tenn. App. 1965); accord Heffernan, 1996 WL 512639, at *4. Upon their resignation or termination, however, corporate officers generally are free to compete with their former corporation. See State ex rel. Jones v. Burnett, 760 S.W.2d 629, 632 (Tenn. 1988); B & L Corp. v. Thomas & Thorngren, Inc., 917 S.W.2d 674, 679 (Tenn. App. 1995); see also Prudential Ins. Co. v. Crouch, 606 F. Supp. 464, 468 (S.D. Ind. 1985), aff'd, 796 F.2d 477 (7th Cir. 1986); Maryland Metals, Inc. v. Metzner, 382 A.2d 564, 568 (Md. 1978); American Window Cleaning Co. v. Cohen, 178 N.E.2d 5, 9 (Mass. 1961). As explained by one authority:

> The fact that one was once a director or officer of a corporation does not preclude his engaging in a business similar to that conducted by the company. It is said that it is a common occurrence for corporate fiduciaries to resign and form a competing enterprise and that unless restricted by contract, this may be done with complete immunity, because freedom of employment and encouragement of competition generally dictate that such persons can leave their corporation at any time and go into a competing business. It is recognized that in doing so they can use in their own enterprise the experience and knowledge they gained while working for their former corporation, and that they can, at least in the absence of a contract provision to the contrary, solicit the customers of their former corporation for business unless the customer list is itself confidential.

18B Am. Jur. 2d Corporations § 1713 (1985); accord Raines v. Toney, 313 S.W.2d 802, 809 (Ark. 1958); Epperly v. E. & P. Brake Bonding, Inc., 348 N.E.2d 75, 83 (Ind. Ct. App. 1976); Lynch v. Patterson, 701 P.2d 1126, 1135 (Wyo. 1985).

Although the policies of freedom of employment and encouragement of competition generally permit officers to leave their corporation at any time and enter a competing business, the law imposes certain restrictions upon former officers' competitive activities. In competing with their former corporation, officers may not use confidential information acquired by them while employed by the corporation, nor may they seize a business opportunity that rightfully belongs to the corporation. See B & L Corp., 917 S.W.2d at 681;

4

Stangenberg v. Allied Distrib. & Bldg. Serv. Co., 1986 WL 7618, at \*\*6-8 (Tenn. App. July 9, 1986); see also Maryland Metals, 382 A.2d at 568; Opie Brush Co. v. Bland, 409 S.W.2d 752, 757 (Mo. Ct. App. 1966); 18B Am. Jur. 2d Corporations §§ 1712, 1713 (1985).

Applying the foregoing law to the facts of this case, we conclude that, upon his termination, Zilly was entitled to open his own business and to compete for his former clients, including Calsonic. Lynch, 701 P.2d at 1135. Zilly's activities in competing for Calsonic's business were limited only by legal principles prohibiting Zilly from usurping a corporate opportunity and from using confidential information belonging to Venture Express. This appeal, therefore, requires us to examine whether the doctrine of corporate opportunity applies to the facts of this case, as well as whether Zilly used confidential information in soliciting Calsonic's business.

### III. Doctrine of Corporate Opportunity

As an initial matter, we conclude that the doctrine of corporate opportunity does not apply to this case. This doctrine precludes a corporate officer or director from diverting a corporate business opportunity for his own personal gain:

> The rule . . . is that if there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, which is, from its nature in the line of the corporation's business, and [is] of practical advantage to it, and which is one in which the corporation has an interest or a reasonable expectancy, and if, by embracing the opportunity, the self interest of the officer or director will be brought into conflict with that of the corporation, the law will not permit him to seize the opportunity for himself. If he does the corporation may claim the benefit of the transaction. This so-called doctrine of corporate opportunity is a species of the duty of a fiduciary to act with undivided loyalty; it is one of the manifestations of the general rule that demands of an officer or director the utmost good faith in his relation to the corporation which he represents.

Tennessee Dressed Beef Co. v. Hall, 519 S.W.2d 805, 808 (Tenn. App. 1974) (quoting 19 Am. Jur. 2d Corporations § 1311).[1]

---

[1]For the current version of the quoted language, see 18B Am. Jur. 2d Corporations § 1770 (1985).

This doctrine precludes an officer from seizing a corporate opportunity of which he becomes aware as a corporate officer, regardless of whether the transaction is consummated during the existence of the fiduciary relationship or after its termination. Stangenberg v. Allied Distrib. & Bldg. Serv. Co., 1986 WL 7618, at **7-8 (Tenn. App. July 9, 1986). Thus, a corporate officer may not escape his fiduciary obligation by resigning from the corporation and seizing the corporate opportunity for himself. Id. As this court has explained,

> Resignation from an office or position burdened with a confidential or fiduciary obligation does not sever accountability for a transaction which had its inception prior to resignation. Were the rule otherwise, the fiduciary obligation would disintegrate by resignation of the fiduciary whenever the attraction of personal gain . . . proved stronger than what would then be an unenforceable moral obligation.

Id., at *8 (quoting Albert A. Volk Co. v. Fleschner Bros., 60 N.Y.S.2d 244, 245 (N.Y. Sup. Ct. 1945), modified on other grounds, 79 N.Y.S.2d 893 (N.Y. App. Div. 1948)).

In Stangenberg v. Allied Distribution & Building Service Co., 1986 WL 7618 (Tenn. App. July 9, 1986), for example, the plaintiff, an officer and director of Allied Distribution and Building Service Company, Inc., learned that South Central Bell intended to award a consolidated contract which, if Allied was the successful bidder, would have represented its largest contract. Stangenberg, 1986 WL 7618, at *2. The plaintiff and other Allied employees immediately began working on potential proposals to submit to South Central Bell. Id. Prior to completion of the formal bid process, however, the plaintiff resigned from Allied, formed a competing corporation, and underbid Allied to seize the opportunity for himself and his new corporation. Id., at **4-5. In affirming the trial court's finding that the plaintiff breached his fiduciary duty to Allied, this court held that the plaintiff's resignation from Allied prior to actually bidding on the contract did not relieve him of his fiduciary duty. Id., at *7.

Despite the factual parallels between Stangenberg and the present case, we conclude that an important distinction precludes a finding that Zilly is liable for usurpation of a corporate opportunity. The doctrine of corporate opportunity applies to "deals in

6

progress." <u>Abbott Redmont Thinlite Corp. v. Redmont</u>, 475 F.2d 85, 89 (2d Cir. 1973). Thus, a corporation's former officer may not compete for prospective customers if, by virtue of his former position, he knows that "a deal is in the process of completion" between the customer and the corporation. <u>Id</u>. Stated another way, a former corporate officer cannot exploit the knowledge that a pre-contract relationship between the corporation and a prospective customer is likely to ripen into a contract. <u>American Window Cleaning Co. v. Cohen</u>, 178 N.E.2d 5, 9 (Mass. 1961).

The corporate opportunity presented in <u>Stangenberg</u> was a deal in progress which, the court held, was wrongfully usurped by the plaintiff after he resigned from the corporation. In contrast, in the present case, no deal was in progress for Zilly to usurp. Venture Express and Calsonic already had an established contractual relationship. At the time Zilly was terminated, Venture Express and Calsonic were completing the second year of a three-year contract which gave either party the right to terminate upon thirty days written notice. Accordingly, this case is distinguishable from <u>Stangenberg</u> in that Zilly did not resign from Venture Express to intercept a deal in progress between a prospective client and Venture Express. Rather, upon his termination from Venture Express, Zilly began competing for an established client of Venture Express. Zilly's fiduciary duty as a former officer of Venture Express did not prevent him from competing for, or even "stealing," Venture Express's clients. <u>Prudential Ins. Co. v. Crouch</u>, 606 F. Supp. 464, 471 (S.D. Ind. 1985), <u>aff'd</u>, 796 F.2d 477 (7th Cir. 1986); <u>Lynch v. Patterson</u>, 701 P.2d 1126, 1135 (Wyo. 1985).

### IV. Use of Confidential Information

Although Zilly was permitted to compete for Calsonic's business immediately after his termination from Venture Express, in doing so, he was not entitled to use Venture Express's confidential information.[2] This appeal, therefore, requires us to determine

---

[2]We reject Venture Express's contention that Zilly's act of filing a corporate charter for Zilly Transportation Services while still employed by Venture Express constituted a breach of Zilly's fiduciary duty. <u>See B & L Corp. v. Thomas & Thorngren, Inc.</u>, 917 S.W.2d 674, 679 (Tenn. App. 1995) (noting that corporate officer may prepare to compete prior to his termination from corporation); <u>accord Bancroft-Whitney Co. v.</u>

7

whether the evidence adduced below supports the conclusion that Zilly used confidential information belonging to Venture Express when he solicited Calsonic's business.

This court previously has held that "confidential business information is akin to trade secrets," which consist of "any formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it." Heyer-Jordan & Assocs. v. Jordan, 801 S.W.2d 814, 821 (Tenn. App. 1990) (quoting Hickory Specialties v. B & L Labs., Inc., 592 S.W.2d 583, 586-87 (Tenn. App. 1979)). Information cannot constitute a trade secret and, thus, is not confidential if the subject matter is "of public knowledge or general knowledge in the industry" or if the matter consists of "ideas which are well known or easily ascertainable." Id.

In the absence of evidence to the contrary, this court has held that the following types of information are not confidential:

(1)     Remembered information as to a business's prices;

(2)     The specific needs and business habits of certain customers; and

(3)     An employee's personality and the relationships which he has established with certain customers. Data Processing Equip. Corp. v. Martin, 1987 WL 30155, at *6 (Tenn. App. Dec. 30, 1987); Stangenberg v. Allied Distr. & Bldg. Serv. Co., 1986 WL 7618, at *7 (Tenn. App. July 9, 1986).

In the present case, Zilly admitted that he knew Venture Express's customer rates and that he knew the rate he needed to beat to secure Calsonic's business. Accordingly, the evidence at trial focused on whether Venture Express's customer rates constituted confidential information. In Stangenberg v. Allied Distribution & Building Service Co., 1986 WL 7618 (Tenn. App. July 9, 1986), this court listed some factors to be considered in determining whether certain information constitutes a business's trade secret:

---

Glen, 411 P.2d 921, 935 (Cal. 1966) (mere fact that officer makes preparations to compete before he resigns his office is not sufficient to constitute breach of duty); Parsons Mobile Prods., Inc. v. Remmert, 531 P.2d 428, 432 (Kan. 1975) (even before termination corporate director or officer is entitled to make arrangements to compete).

8

(1)    the extent to which the information is known outside of [the] business;

(2)    the extent to which it is known by employees and others involved in [the] business;

(3)    the extent of measures taken by [the business] to guard the secrecy of the information;

(4)    the value of the information to [the business] and to [its] competitors;

(5)    the amount of money or effort expended by [the business] in developing the information;

(6)    the ease or difficulty with which the information could be properly acquired or duplicated by others.

Stangenberg, 1986 WL 7618, at *6 (quoting Restatement of Torts § 757 (1939)).

Applying the foregoing factors to the evidence introduced at trial, we conclude that Venture Express's customer rates did not constitute confidential information. Venture Express's owner, Jimmy Allen, testified that he considered Venture Express's customer rates to be confidential information and that he did not permit Venture Express's officers and employees to reveal its rates to competitors. On cross-examination, however, Allen acknowledged that Venture Express had approximately eighty owner-operators who were independent contractors, not employees of Venture Express. These independent owner-operators either knew or could ascertain the customer rates for their respective moves because their pay amounts were based on specified percentages of the customer rates. Harry Woods, the president of Tanksley Transfer, a subsidiary of Venture Express, corroborated this testimony. Woods testified that, if they wanted to, the owner-operators could calculate the applicable customer rates for their moves from the information contained on their pay stubs. The pay stubs indicated the owner-operators' pay amounts and the applicable percentages of the customer rates which these amounts represented. Moreover, Jimmy Allen testified that the customers themselves were not prohibited by contract or otherwise from revealing the rates they were charged by Venture Express, and he acknowledged that at least one customer had revealed competitors' rates to him in the past.

9

The foregoing evidence demonstrates that at least eighty non-employees of Venture Express either knew or could readily ascertain the respective rates charged to Venture Express's customers. Although Venture Express prohibited its officers and employees from revealing customer rates, it apparently imposed no similar prohibition on either its customers or its independent owner-operators. In fact, prior to trial, one of Venture Express's customers, Huntco Steel, Inc., faxed material to Zilly which contained rates charged by its various carriers, including Venture Express. Under these circumstances, we hold that Venture Express's customer rates did not constitute confidential information and, thus, that Zilly's use of this information to obtain Calsonic's business did not result in a breach of his fiduciary duty as a former corporate officer of Venture Express.

## V. Conclusion

The trial court's judgment is hereby reversed, and this cause is dismissed. Costs of this appeal are taxed to Venture Express, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.

10