Professional Service Corporation, Appellee, v.
Wallace J. Johnson et al., Appellants.

Gen. No. 42,191.

Heard in the first division of this court for the first district at the April term, 1942. Opinion filed November 30, 1942.

RAYMOND F. HAYES, of Chicago, for appellants; J. GLENN SHEHEE and JOHN A. QUIGLEY, both of Chicago, of counsel.

BERNARD J. BROWN, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff corporation, which was engaged in collecting accounts, filed its complaint in equity against defendants, who were engaged in the same business, to enjoin and restrain them from soliciting and making collections from plaintiff's customers. Defendants filed their answer and the cause was referred to a master in chancery to take the evidence and make up his report together with his findings and recommenda-

tions. The master took the evidence, made up his report and recommended that the complaint be dismissed for want of equity. Objections were filed to the report which were overruled and they were ordered to stand as exceptions. Certain of the exceptions were sustained, others overruled and a decree entered enjoining the defendants "from in any manner soliciting, securing or obtaining collection business from such persons, firms, partnerships or corporations who were the active clients of the plaintiff during the year ending July 14, 1941, and from soliciting or urging the employes of the plaintiff to leave the plaintiff's employ, and from in any way interfering with or disturbing the business of the plaintiff." Defendants appeal.

The record discloses that plaintiff, the Professional Service Corporation located at 188 W. Randolph street, Chicago, was incorporated in 1926 under the laws of Illinois and since that time has been engaged in the business of making collections for business, industrial and professional concerns and that for the purpose of obtaining accounts for collection it maintains a force of solicitors and collectors. Sometimes as many as 35 persons were employed. The solicitors would call from time to time on hospitals, loan associations, physicians, dentists and grocery concerns and similar types of business whose unpaid accounts were solicited for the purpose of collection and for such services plaintiff would charge approximately 50 per cent of the amounts collected.

Defendant Johnson was employed by plaintiff in 1935 and from time to time was promoted and in June, 1941, he was employed as general manager and received a salary of $3,600 per year. He had full and complete charge of the business and enjoyed the complete confidence of Spencer J. Shaw who testified: "I own the Professional Service Corporation. At the present time I am President and Treasurer." Defendant McCoubrey was employed by plaintiff in 1935 and

in June, 1941, was "Collection Manager" receiving a salary of $2,300 a year. He also was familiar with plaintiff's business. The other defendants, Phillips and Peters, were also trusted employees of plaintiff but for a shorter period of time.

There was no agreement between any one of the four defendants and plaintiff that they would not go into a competing business for a period of time after they ceased to be employed by plaintiff. June 10, 1941, and probably for some time before that date, Shaw, the president and owner of the stock of plaintiff, became suspicious that Johnson was going to leave and set up a competitive business and on that date he accused Johnson of this but Johnson denied it. However Shaw did not believe Johnson and discharged him at that time. Shortly thereafter, Johnson rented space on La Salle street and June 23, he obtained a charter for defendant, the Financial Service Corporation and set up a new collection organization. A short time thereafter, McCoubrey, Phillips and Peters also joined the new corporation.

The day after Johnson was discharged, Shaw accused defendant McCoubrey of planning to go into the collection business with Johnson which McCoubrey denied. At that time Shaw demoted McCoubrey, and three or four weeks thereafter he resigned and as stated, went with the new company and acted as its secretary.

There is no evidence that Johnson or the other defendants, at any time, prepared a list of plaintiff's customers or took any such list with them when the new corporation was formed, or afterward. There is further evidence to the effect that after the new corporation was formed and had set up a competing business, it solicited some of the plaintiff's customers and other persons and concerns.

Plaintiff's position, as stated by its counsel, is that "because of the nature of the business of the plaintiff

and the confidential relationship between plaintiff and its employees, the names of plaintiff's clients constitute a trade secret, entitled to the protection of a court of equity." That "The individual defendants were employees coming within the classification of fiduciaries, who are under obligation though not expressed, yet always implied, not to use the names of plaintiff's customers for their own advantage and to the damage of the plaintiff" and that the evidence shows that "the individual defendants, while in the employ of the plaintiff, entered into an agreement among themselves to join in organizing a collection business and to exploit the plaintiff's clients for their own use and advantage and to the irreparable injury of the plaintiff."

We think the evidence is to the effect that some time before Johnson was discharged he was contemplating setting up a collection agency of his own and talked to some of plaintiff's employees on this subject. But under the law we are of opinion that defendants cannot be enjoined from organizing and carrying on a rival collection agency, nor can they be enjoined from soliciting plaintiff's customers. *American Cleaners & Dyers v. Foreman*, 252 Ill. App. 122; *Woolley's Laundry, Inc. v. Silva*, 304 Mass. 383, 126 A. L. R. 758.

In the *Foreman* case we considered this question, discussed the conflicting authorities at considerable length and we there reached the conclusion that in the absence of an express contract, equity would not enjoin an employee, after the termination of his employment, from soliciting business from the customers of his former employer where no list of names was taken and no fraud committed. We adhered to this holding in *Messenger Publishing Co. v. Mokstad*, 257 Ill. App. 161; *Tinkoff v. Wyland*, 272 Ill. App. 280, and this was followed by another division of this court in *Capitol Dairy Co. v. Meyer*, 293 Ill. App. 632 (Abst.).

In the *Woolley's Laundry* case, 304 Mass. 383, the court considered the many authorities on the question

and reached the conclusion that a proprietor of a laundry who furnished a "route man" with a list of the names and addresses of the employer's customers was not entitled to have the "route man" enjoined from soliciting and accepting business from those customers for his own account after he had left the employment without taking away the list except by memory. The court there said (386): "There is no finding that the defendant made any misrepresentations to any of the customers or that, in soliciting them, he made use of any list that had been furnished to him. In fact, at the argument it was agreed that the defendant took no list away with him beyond what he carried in his head.

"The question to be decided is whether the defendant is wrongfully making use of information in part originally acquired through lists furnished by his former employer but now apparently no longer needed by the defendant, inasmuch as he carries the names in his memory. If no lists were involved, we are of the opinion that the plaintiff could not prevail," citing a number of Massachusetts cases. In that case the court further said that the route men were furnished by the laundry company with the names and addresses of their customers " 'in the expectation, not expressed to said "route" man, including the defendant, that they . . . would not disclose or use the same for their personal gain except as such employees.' . . . Sometime in 1938 the plaintiff's president and manager, because of an apprehension that the defendant contemplated engaging in the laundry business on his own account, requested him to execute and deliver to the plaintiff a written contract defining his duties as an employee and informed him that it would be necessary for him to execute and deliver such a contract if he wished to remain as an employee." Defendant refused, and left the employer and told the employer he was going into the laundry business for himself. In that case, in

discussing the authorities, the court quoted from *Club Aluminum Co. v. Young,* 263 Mass. 223: " 'The use of the information thus obtained [confidentially] amounted . . . to a breach of duty. The use of trade or business secrets gained through employment may properly be made the subject of restrictive agreements. In this class fall also agreements not to use lists of customers and not to entice old customers away by any form of solicitation. Knowledge confidentially gained in the course of employment may be made the subject of restrictive agreement and acts in derogation of such a contract will be restrained. But an employer cannot by contract prevent his employee from using the skill and intelligence acquired or increased and improved through experience or through instruction received in the course of the employment.' In the absence of an express contract containing restrictive covenants as to the use of lists of customers, the employer, if he seeks to enjoin an employee from making use of the information contained in such lists, must, of necessity, resort to the allegation, as in the case at bar, that an implied term of contract of employment has been violated, or that there has been a breach in respect of the duty owed by the employee to the employer.

"In the case at bar was the information that was furnished to the defendant by the plaintiff by way of the names and addresses of its customers confidential? The authorities do not appear to be in accord on this question. It has been held that, where a laundry driver is given a list of customers on his route and while so employed acquires knowledge of and access to all of these customers, he cannot be enjoined after leaving his employment from utilizing his knowledge and soliciting the patronage of the customers. Such a list was held not to be a trade secret," citing in support of this, cases from Maryland, Washington, Arkansas, New Jersey Equity, New York, Michigan, South Dakota and the *Foreman* case, above cited. The court

then discusses authorities holding to the contrary from Rhode Island, California, Kansas, and New York and concluded by holding a route man could not be enjoined, after he had severed his employment, from soliciting customers of his former employer.

There is no substantial difference between the facts in the *Foreman* and *Woolley's Laundry* cases and the facts in the case at bar.

For the reasons stated, the decree of the circuit court of Cook county is reversed and the cause remanded with directions to enter a decree dismissing the suit for want of equity.

*Reversed and remanded with directions.*

MATCHETT, P. J., and McSURELY, J., concur.