Heatbath Corporation, a Corporation, Plaintiff-Appellee, v. William Ifkovits and Deveco Corporation, a Corporation, Defendants-Appellants.

Gen. No. 69–30.

Second District.

December 1, 1969.

Rehearing denied January 15, 1970.

William A. Redmond, of Bensenville, and Francis X. Riley, of Chicago, for appellants.

Price, Cushman, Keck & Mahin, Edward S. Silber and John T. Allen, Jr., of Chicago, and John S. Woodward, of Wheaton, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Heatbath Corporation brought suit to obtain injunctive relief and an accounting from the defendants. Defendants appeal from the final order entered January 24th, 1969, enjoining defendants from: (a) communicating "any knowledge of plaintiff's confidential formulas and processes and the identity of its customer"; (b) selling any products ". . . substantially similar to" plaintiff's; and (c) soliciting 12 named customers. The order also granted an accounting of prior sales.

The complaint alleged that Heatbath had developed many trade secrets concerning its chemical blending business in which it sold products for use by others in the manufacture and treatment of metals; that it had developed trade secrets concerning its business which it had tried to keep in confidence, but that it had to reveal them to a trusted, high-ranking employee, William Ifkovits, for use in his work; that after learning these secrets Ifkovits left the employ of Heatbath and used such secrets to compete with Heatbath in direct violation of his fiduciary duty to maintain such secrets and confidence.

Defendants, answering the complaint, admitted that Ifkovits had begun work with Heatbath without knowledge of the chemical business and had accumulated extensive detailed knowledge of Heatbath's business, including knowledge of its formulas and processes, and that immediately after leaving Heatbath Ifkovits organized defendant Deveco Corporation as a competing business. Defendants also offered an affirmative defense which in substance alleged that Ifkovits acquired no special knowledge, unique or secret information dur-

160

ing his employment with the plaintiff; that all of the plaintiff's formulas could be found in books that are available to the public; that the customers he called upon could be secured from the telephone directory and other directories showing which companies are interested in these kinds of products. Defendants also allege that other competitors sell similar compounds in the same market.

Ifkovits testified that he began working for Metal Finishing Research Corporation (MFR) as plant manager in 1956 after being hired by a Mr. Walen, the president of Heatbath. Prior to this time he had no experience in chemical blending, but had been a carpenter, with no prior chemical background. His duties included overseeing other employees, preparation of formulas and formula cards, buying, blending and shipping chemical products, entirely for Heatbath Corporation. Heatbath owned all the formulas he was dealing with, some of which were patented. Ifkovits prepared the products sold to the 12 companies named.

In about November of 1963 Ifkovits began to work for Heatbath as a salesman. He was supplied with a list of customers which included the 12 customers with whom he worked for MFR, and he sold the 12 customers and others the products which he had blended for them at MFR.

In November of 1965, after a dispute over the cutting of his base salary, Ifkovits left Heatbath. Prior to leaving and without Heatbath's knowledge or approval, Ifkovits wrote down formulas for all 12 customers. He also made copies of other records, such as product comparison charts and price lists.

Immediately after leaving Heatbath, Ifkovits formed the defendant Deveco Corporation and immediately called upon the 12 customers, receiving one or two orders from them in December of 1965, and orders from all 12 within 4 or 5 months after starting business for

himself. He continued to sell the 12 customers Deveco products which were the same sort that Heatbath sold. Some were exactly the same in composition and use as those sold by Heatbath to the same customers.

In his testimony Ifkovits admitted that it would be difficult to say how long it would have taken to obtain the customers without the information he already possessed, but that it would take at least a year to get a new customer with no experience in sales. He admitted that he told the customers that if they gave him an order he could "ship it tomorrow," and that this was partially because he had the formulas. He testified that he did not sell any of the patented formulas of Heatbath. He admitted that he had signed a contract with MFR in 1960 agreeing to maintain secrecy in connection with methods, processes and systems employed.

Ifkovits testified repeatedly that Heatbath and he had no secret formulas and that all the formulas he used were generally known in the industry.[1]

Ifkovits was asked the question:

Q. "And in your position as plant manager, did you not accumulate a thousand and one bits of information about Heatbath's confidential formulas and processes."

A. "Sure did, yes."

The president of Heatbath, Ernest A. Walen, Jr., testified that in many cases special formulas were required for special customers and some of them were patented; that unless blending of the products is proper they may be unusable; that different products and procedures were used with various customers; that Heatbath main-

---

[1] However, there was an admission from him in an affidavit signed in the course of legal proceedings which he had instigated against MFR that a request by MFR was "unreasonable in that it would require (Deveco) to disclose secret processes and procedures which are necessary and vital."

tains its own laboratories for basic research and analysis of its own products and also products produced by competitors, and that the annual cost of maintaining the facilities is about $100,000 or more. He estimated that with regard to the 12 named customers a minimum of 2 to 3 years was required to develop the accounts. Some of the accounts had been with Heatbath for 17 or 18 years before they were delivered to Ifkovits. He testified to the securing of samples sold by Deveco which compared very closely to the products sold to the same customers by Heatbath, both in name and in formula.

Walen admitted that other competitors served the 12 with similar products. He acknowledged that general formulations and customer information could be obtained from general specification publications, but that the information was not specific enough for anyone to make a living using it. He testified that the formulations, comparison charts, customer lists and price structures could not be obtained from publications or metallurgical societies, and that price often depended upon the amount of service to a customer.

There was other conflicting testimony as to the time and effort which would be required to duplicate the formulas for the various customers without the specific information acquired from Heatbath.

The Opinion of the trial court found that the relation between Heatbath and Deveco was more than arm's length dealing. The court stated:

> Even though many formulas are available to a person in general publications and also the names of certain customers are available by going and looking through some trade directories, there is no doubt that the defendants, William Ifkovits and Deveco Corporation, had a distinct advantage over other companies in this highly competitive field when they started in business. This is a highly com-

petitive business and any slight edge that one company can secure gives it a very definite advantage in the field in securing orders for their products, and William Ifkovits certainly had this advantage when he left Heatbath. He admitted that he copied their formulas and that he became well acquainted with the purchasing agents of these various companies and corporations and armed with these formulas and the acquaintanceship made with these various purchasing agents, he was able to immediately step in with a new business making large sales to these companies on the basis of what he had learned from Heatbath.

The judgment order entering the permanent injunction fixed a date of January 1, 1970, for its termination on the theory that this would be a reasonable time.

It is plaintiff's theory that Heatbath Corporation possessed protected trade secrets which were offered to Ifkovits as a fiduciary and that the latter violated his fiduciary trust. They argue that the evidence fully justified the scope and duration of the order for an injunction to protect Heatbath and for an accounting.

Defendants counter that Ifkovits acquired no special knowledge or secret information during his employment with plaintiff; that all of the plaintiff's formulas could be found in books that are available to the public and that the customers he called upon could be secured from various directories. Defendants argue that there are no trade secrets to be protected and that, in any event, the court erred in granting an injunction without a hearing or sufficient information as to its scope or duration.

We believe that this case is controlled by our holding in Revcor, Inc. v. Fame, Inc., 85 Ill App2d 350, 228 NE 2d 742 (1967), in which we followed Schulenburg v. Signatrol, Inc., 33 Ill2d 379, 212 NE2d 865 (1965).

 A trade secret is defined as "a secret plan or process, tool, mechanism or compound known only to its owner and those of its employees to whom it is necessary to confide it." Schulenburg v. Signatrol, Inc., supra, at page 385. It is something which must be held in secret or confidence by the one who possesses it, and it must relate to the trade or business. Revcor, Inc. v. Fame, Inc., supra, at page 355.

Here there is evidence that, although general formulas were in the public domain, Heatbath spent considerable time and expense investigating and developing individualized formulas for many of its customers. There is ample evidence that these formulas were held in confidence. Testimony indicated that no one could compete "right down the line" with Heatbath until Deveco did.

There is no question that these formulas could be legally copied if the information were obtained from public sources or from an analysis and duplication of plaintiff's product. The question is, however, whether the defendant copied the plaintiff's product from legal sources or from confidential sources of the plaintiff under such circumstances as to constitute unfair competition. The record indicates that the defendant used the latter method. Almost immediately after leaving his employment defendant was able to compete with plaintiff using substantially identical formulas for the competing products. Ifkovits admitted he copied the plaintiff's formulas and took them with him. He showed no expense for research or development, but rather was able to make a significant profit almost immediately by selling products to plaintiff's old customers at half the plaintiff's price. The fact that plaintiff had been able to do a substantial business previously at twice the price defendant charged demonstrates that the customers of plaintiff were convinced that there was some differentiation between plaintiff's products and others on the market.

■ ■ We conclude that there is ample evidence in the record to sustain the trial court's finding that defendant copied, rather than developed, the formulas of the plaintiff by independent legal methods, that this amounted to a breach of trust and the pilfering of trade secrets by a former employee, under circumstances entitling the plaintiff to protection. While defendants suggest that there is no evidence of a fiduciary relationship with plaintiff since knowledge of the formulas and the mixing process was acquired while Ifkovits was an employee of MFR, the record belies this contention. The restrictive covenant contract between Ifkovits and MFR is not an issue here. It is admitted that Heatbath owned all the formulas and products developed by MFR, and reference to the employment contract with MFR was made by plaintiff to demonstrate that Ifkovits was aware that Heatbath formulas were considered to be confidential.

■ We do not believe, however, that the trial court was correct in its finding that the identity of plaintiff's customers was also a trade secret. Ordinarily, on going into business for himself or into the employ of another, an employee will not be enjoined from using a list of customers obtained in the course of his employment, absent an express contract. Mid-States Vending Service v. Rosen, 77 Ill App2d 83, 86, 222 NE2d 99 (1966) ; Professional Service Corp. v. Johnson, 316 Ill App 431, 434, 45 NE2d 191 (1942) ; American Cleaners & Dyers v. Foreman, 252 Ill App 122, 126 (1929). There may be circumstances under which a comprehensive list can be obtained only through great expense so that the list could be considered a trade secret and entitled to protection without an express contract, but here the customer list was not so qualified.

■ It is evident that Ifkovits copied the names of the customers from Heatbath rather than going to lists which were legally obtainable for the information.

166

However, it cannot be said that Heatbath was damaged thereby because the names of the customers were publicly available to anyone with no delay or effort involved and that, therefore, there was no advantage gained by copying them. Ifkovits should not have been restrained from seeking out customers of Heatbath with whom he had developed substantial business rapport under circumstances which show that he did not obtain a distinct advantage from the customer list. See Revcor, Inc. v. Fame, Inc., supra, at page 357. However, as we have previously indicated, defendants were properly enjoined from making use of the formulas acquired under a fiduciary relationship with a former employer to unfairly compete and to gain a distinct advantage.

We finally consider the question raised as to the scope of the injunction and whether the trial judge heard enough evidence to make his determination.

■■ The proper scope of the injunction is the period required for the defendants to duplicate the formulas, which we have held to be trade secrets, by lawful means. Schulenburg v. Signatrol, supra, page 388; Revcor, Inc. v. Fame, Inc., supra, page 356. There were 12 specialized formulas involved, each tailored to the needs of the particular customer. While the written opinion of the court did not deal with the duration of the injunction, and no additional evidence was taken upon the entry of the final judgment order, we believe that the record fairly supports the period chosen by the court. We have noted that the trial court invited a discussion of the injunction order before it was entered and accepted defendant's request for a time limit, and that the defendant offered no specific objection to the fairness of the 4-year period.

The injunction was properly issued to prevent defendants from communicating any knowledge of plaintiff's confidential formulas and processes and from selling any products substantially similar to plaintiff's by solici-

tation of the 12 named customers from the date of the order until January 1, 1970.

We modify the judgment order of the trial court by striking therefrom the phrase, "and the identity of its customers," and in all other respects affirm the judgment order below.

Judgment modified and, as modified, affirmed.

MORAN, P. J. and DAVIS, J., concur.