375 So.2d 1136 (1979)
ERIK ELECTRIC COMPANY, INC., Appellant,
v.
Bruce ELLIOT, a/k/a Bruce Allen d/b/a Era Electric Company, Appellee.
No. 78-2111.
District Court of Appeal of Florida, Third District.
October 9, 1979.
Rehearing Denied November 9, 1979.
Horton, Perse & Ginsberg and Arnold R. Ginsberg, Miami, Colodny & Fass, North Miami, for appellant.
Koeppel, Stark & Newmark and Robert Gellman, Miami, for appellee.
Before PEARSON, HENDRY and SCHWARTZ, JJ.
PEARSON, Judge.
The plaintiff, Erik Electric Company, Inc., appeals from a final judgment for the defendant, Bruce Elliot, a/k/a Bruce Allen d/b/a Era Electric Company. The judgment was entered at the conclusion of the plaintiff's case in a trial without a jury. See Fla.R.Civ.P. 1.420(b). We hold that the evidence viewed in the light most favorable to the plaintiff presented a prima facie case and, therefore, we reverse for a trial of the issues involved.
Plaintiff Erik Electric was the employer of defendant Bruce Elliot. The testimony of Henry Schoenetter, the plaintiff's president and operating officer, was that at the time the company was formed and Elliot was employed, the plaintiff company was engaged in a unique business. In this regard, the plaintiff sells light bulbs to various companies and solicits business by WATS line telephone. The plaintiff finds *1137 its customers by obtaining from other companies (for a fee) names of companies throughout the United States. The plaintiff then reviews these large, general listings and breaks them down. It chooses individual categories it believes will produce business, and areas in which it elects to do business. It also purchases directories, e.g., hospital, bank and industrial directories, and performs the same selection process with each. The plaintiff attempts to distill these large listings down into workable classifications and from these specific listings initiates contact in order to solicit business.
After the plaintiff reviews the general lists and makes its initial selections, it sends out direct mailings and pays for advertising the product it intends to sell. The testimony in this record reflects that the plaintiff spent $58,000 on this process.
The advertising material and direct mailings contain business reply cards with "inquiry cards" to be returned to the plaintiff with information on the potential customers listed. When the inquiry cards are returned to the plaintiff, the customers are contacted by telephone after the information on the inquiry cards is reviewed and catalogued.
During the time the defendant was employed, his leads were supplied through the plaintiff's inquiry cards. The defendant was also given leads not only from the inquiry cards but also from established accounts assigned to him.
The testimony also reveals that, at the time the defendant left the plaintiff, he took with him the customer lists which were the product of Schoenetter's method of operation, that is, the customer lists distilled from various other lists. Thereafter, by the use of these lists, the defendant was able to take over a large portion of the business operated through use of the lists. Additionally, from the account record books, he removed lists of persons to be recontacted in the future.
At the conclusion of the plaintiff's case, the defendant moved for a directed verdict. The trial court granted the motion stating:
"I think there may be some ethical questions involved from a legal standpoint, because of the relationship of the parties and the way they conducted themselves, but there [are] no legal remedies in this court as far as this case.
"I'll grant your motion. Yes."
The briefs of the parties have presented only one Florida case which appears to be directly related to the decision in this cause, i.e., Renpak, Inc. v. Oppenheimer, 104 So.2d 642 (Fla. 2d DCA 1958). In Renpak, the Florida Second District Court of Appeal affirmed an order of a judge of the circuit court which dismissed a complaint by Renpak, the plaintiff corporation, in which it was alleged that the defendants, while employed by the corporation, had made plans for the establishment of a competing business and had obtained the names of the corporation's customers. Then, withdrawing from the corporation and by use of the specialized knowledge they had obtained, they were able to take over a large portion of the plaintiff corporation's business. In holding that no cause of action existed under this statement of fact, the court held:
* * * * * *
"Generally, where a former employer is engaged in business as a manufacturer or wholesaler dealing primarily with retail merchants or jobbers, or sells to members of a readily ascertainable class, the knowledge of the names of the customers of the employer which a former employee has is not a `trade secret' which equity will protect through injunction."
* * * * * *
Following the reasoning of this decision, we have attempted to determine from the general law when an action may be maintained for the protection of an employer against the use by a former employee in a competing business of matters which may be said to be "trade secrets." In this connection, the decision of the Florida First District Court of Appeal in Inland Rubber Corporation v. Helman, 237 So.2d 291 (Fla. 1st DCA 1970), also gives guidance. The court there stated:

*1138 "In absence of an agreement between the parties providing therefor, the use of a former employer's customer lists is not subject to injunction unless such lists constitute or are in the nature of trade secrets and knowledge thereof was obtained in confidence. This is particularly so where the names of such customers are readily obtainable from classified telephone directories and like sources."
* * * * * *
In this regard, an annotation at 28 A.L.R.3d 7, 31 (1969), sets out the following general rule to the effect that
"... even in the absence of a contractual restriction, a former employee is precluded from using for his own advantage, and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment; and this rule has been affirmed or recognized in many cases dealing with the rights and duties of a former employee who solicits his former employer's customers, or otherwise uses his knowledge of customer lists obtained in his former employment."
The plaintiff's evidence, which the defendant was precluded from refuting because of the directed verdict, establishes that the lists the defendant subsequently used were confidential classifications of prospective customers made by the plaintiff as a result of extensive work and according to a specially developed plan, together with the expenditure of substantial sums of money for the production of the list. Under these circumstances, we hold that it appears, at least prima facie, that the lists taken by the defendant when he left the plaintiff's employment are entitled to be considered trade secrets of the corporation. We do not agree with the argument that the defendant is entitled to use the listings he retained from his former employment with the plaintiff because the listings were readily available to the public, inasmuch as we are not dealing with the listings, per se, but rather with a distillation of larger lists, reflecting considerable effort, knowledge, time and expertise on the part of the plaintiff. As such, these listings are entitled to protection from a former employee who appropriates them and uses them to the detriment of the employer's business. This holding is, we think, supported by the following cases: Town and Country House and Homes Service, Inc. v. Evans, 150 Conn. 314, 189 A.2d 390 (1963); Cupid Diaper Service v. Adelman, 27 Misc.2d 1095, 211 N.Y.S.2d 813 (1961); Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 282 N.E.2d 921 (1972); Heatbath Corporation v. Ifkovits, 117 Ill. App.2d 158, 254 N.E.2d 139 (1969); and see Bruce v. Ferrara, 107 Ill. App.2d 272, 246 N.E.2d 874 (1969).
Reversed and remanded with directions for further proceedings in accordance with the view herein expressed.