**HICKORY SPECIALTIES, INC.**

v.

**FOREST FLAVORS INTERNATIONAL, INC. and Samuel D. Crace.**

No. 2–97–0008.

United States District Court,
M.D. Tennessee,
Northeastern Division.

Nov. 6, 1998.

Jay Scott Bowen, Timothy L. Warnock, Sarah W. Anderson, Bowen, Riley, Warnock & Jacobson, PLC, Nashville, TN, for Plaintiff.

Benjamin Cleveland Fordham, Craig Vernon Gabbert, Jr., David Alexander Fardon, Joseph Allen Kelly, Harwell, Howard, Hyne, Gabbert & Manner, Nashville, TN, for Defendants.

## MEMORANDUM

WISEMAN, Senior District Judge.

This diversity action for trade secret misappropriation was tried before a jury beginning September 8, 1998. At the conclusion of all proof, the Court denied the parties' motions for judgment as a matter of law, and determined that the only remaining issue was whether an injunction should be issued. Such relief is a purely equitable remedy and would not ordinarily be submitted to a jury. However, because the jury had already heard all the testimony, the Court determined to submit the issue to them as an advisory jury.

The Court submitted a special verdict form to the jury. After deliberating, the jury returned to the courtroom and, under oath, answered "No" to the question, "Does the plaintiff Hickory Specialties have trade secrets?" The Court agreed and adopted the jury's verdict, and accordingly entered judgment for the defendants. (Doc. 154.) Hickory filed a timely motion for a new trial and defendants responded.

## DISCUSSION

The decision whether to grant a new trial is within the discretion of the trial judge and is reviewable for abuse of discretion only. *Monette v. AM–7–7 Baking Co.,* 929 F.2d 276, 280 (6th Cir.1991). Grounds for granting a new trial include a verdict against the weight of the evidence, excessive or insufficient damages, substantial errors concerning admission of evidence, and facial inconsistency in the verdict. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). This list is not exhaustive. Ultimately, the most important consideration is whether the Court believes the trial was fair. *See Jackson v. Shell Oil Co.,* 401 F.2d 639 (6th Cir.1968). The Court concluded at the close of trial that the weight of the evidence was clearly in favor of the defendants. The Court addressed Hickory's other contentions in ruling on various motions in limine and requests for jury instructions. However, the Court will briefly address them again here.

### 1. Court Protection of "Confidential Information"

First, Hickory argues that the Court erred in enforcing nondisclosure agreements between Hickory and defendant Sam Crace only to the extent that they covered "trade secrets." (Doc. 155, at 1.) Hickory objects, in other words, to the fact that the Court declined to include the words "and other confidential information" when instructing the jury as to what exactly the nondisclosure agreements covered. (*See* Doc. 156, at 2.)

In various nondisclosure agreements entered into evidence at trial, Sam Crace promised never to divulge information about Hickory's manufacturing methods, equipment, customers, trade secrets, and "other matters." (*See, e.g.,* May 20, 1982 Non–Compete Agreement, ¶¶ 2–6, Pl.'s Trial Ex. 3). Hickory did not develop any proof regarding Sam Crace's use of or intent to use customer information or any other "confidential information" that did not specifically relate to the technology involved in the production of liquid smoke, and the Court therefore determined that there was no need to specify that the agreements in question protected trade secrets as well as "other confidential information."

Moreover, the terms "trade secret" and "confidential information" as used in Tennessee case law are synonymous for all practical purposes, and confidential business information is only protectible to the extent that it qualifies as a trade secret. For example, in *Heyer–Jordan & Assoc., Inc. v. Jordan,* 801 S.W.2d 814, 815 (Tenn.Ct.App. 1990), an employer sued two former employees, alleging that the defendants had violated their noncompetition agreements by using "confidential business information" specifically protected by the terms of their agreements. The employer defined the confidential information as consisting of "customer lists, brochures, product information, administrative procedures of [the employer] as well as long-standing personal relationships established through [the employer]." *Id.* The court interpreted the term "confidential business information" to mean "private or secret information pertaining to the business," and further clarified: *"It would appear that confidential business information is akin to trade secrets."* *Id.* at 821 (emphasis added). The court went on to define trade secrets, and determined solely on the basis of that definition that any information to which the employees were privy was not subject to protection. *Id.* at 822.

Likewise, in *Venture Express, Inc. v. Zilly,* 973 S.W.2d 602, 604 (Tenn.Ct.App.1998) (appeal denied), the precise issue was whether a corporate officer who had left a corporation had breached his fiduciary duty by going into competition using "confidential information acquired by [the employee] while employed by the corporation." In order to determine whether the defendant had breached his fiduciary duty, the court first had to define confidential information. In doing so, it said, "This court has previously held that 'confidential business information is akin to trade secrets,' which consist of 'any formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it.'" *Id.* at 606 (citing *Heyer–Jordan,* 801 S.W.2d at 821). The court continued, "Infor-

mation cannot constitute a trade secret and, thus, is not confidential if the subject matter is 'of public knowledge or general knowledge in the industry' or '. . . easily ascertainable.'" *Id.* The court then determined, again on the basis of the trade secret definition, that the customer rates the employer sought to protect were "easily ascertainable" and thus not subject to judicial protection. *Id.* at 607. Similarly, the Tennessee Supreme Court has held that an agreement requiring a former employee to keep confidential all information regarding "pricing, customer lists, company policy and procedures" was unenforceable because the information at issue did not constitute trade secrets. *Selox, Inc. v. Ford*, 675 S.W.2d 474, 474–75 (Tenn.1984).

As these cases illustrate, courts as well as companies suing former employees mechanically recite the phrase "trade secrets and other confidential information" without necessarily stopping to clarify that trade secrets are made up of confidential information, and confidential information will only be subject to protection to the extent it qualifies as a trade secret—in other words, that it really is confidential and not easily ascertainable, and it affords the owner a competitive advantage. *See also Data Processing Equipment Corp. v. Martin*, No. 87–230–II, 1987 WL 30155 (Tenn.Ct.App. Dec.30, 1987); *Amarr Co., Inc. v. Depew*, No. 03A01–9511–CH–00412, 1996 WL 600330 (Tenn.Ct.App. Oct. 16, 1996).

In this case, the Court defined trade secret for the jury, and included in that definition the following: "[A] trade secret may consist of any formula, process, pattern, device or compilation of information that is used in one's business and which gives the business owner an opportunity to obtain an advantage over competitors who do not use it." (Trial Tr. at ____.) This definition is obviously broad enough to encompass confidential information that does not relate to technology and manufacturing processes. Even if it were not, It is well established that agreements in restraint of trade, though not invalid per se, are disfavored in Tennessee and enforceable only if "reasonable under the particular circumstances." *Heyer–Jordan*, 801 S.W.2d at 820 (citing *Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361, 363 (1966)). A promise not to divulge information that is not actually secret is per se unreasonable and therefore unenforceable. Thus, even where a former employee signs a contract promising never to divulge confidential information such as customer lists and so forth, that contract is only enforceable to the extent that the information in question actually is (1) secret, (2) business related, and (3) afforded the employer a competitive advantage. This Court did not "err in enforcing the nondisclosure agreements only to the extent that they covered trade secrets" (Doc. 155, at 1), and will not grant a new trial on the basis of that claim. See also this Court's discussion of basically the same issue in *Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.*, 12 F.Supp.2d 760, 764–65 (M.D.Tenn.1998).

## 2. Employee's Continuing Duty of Loyalty

Hickory also maintains that the Court erred in "instructing the jury that a former employee does not have a continuing duty of loyalty not to use confidential information." (Doc. 155, at1.) Specifically, Hickory submitted a requested jury instruction that stated:

Although a former employee has no general duty not to compete with his former employer unless otherwise agreed, he does owe a duty to his former employer not to use or to disclose to third persons, on his own account or on account of others, in competition with the former employer or to his injury, (1) *trade secrets*, (2) written lists of names, *or* (3) *other similar confidential matters* given to him only for the former employer's use or acquired by the former employee in violation of his fiduciary duty. The former employee only may use general information concerning the former employer's method of business, and then only if not acquired in violation of his fiduciary duty.

Therefore, a former employee violates his fiduciary duty if he subsequently uses processes the employer has kept secret from other manufacturers, whether or not they constitute trade secrets or merely confidential information.

(Doc. 145.) Instead of using that precise instruction, the Court provided the jury with a lengthy and detailed definition of trade secrets, and then instructed the jury that:

> An employee who is not bound by a covenant not to compete does not violate a duty of loyalty to his former employer by going to work in direct competition with the employer and making use of general business information learned while the employee was employed unless he improperly makes use of trade secrets. Absent trade secrets, any duty of loyalty to a former employer expires upon the employee's last day of work for that employer.

(Trial Tr. at ___.)

█ As illustrated in the above discussion of trade secrets and confidential information, a former employee is not, under Tennessee law, bound not to divulge confidential information unless that information would qualify as a trade secret—that is, that it is actually secret, business related, and affords a competitive advantage. *See Venture Express, Inc. v. Zilly,* 973 S.W.2d 602 (Tenn.Ct.App. 1998) (appeal denied). *See also Selox, Inc. v. Ford,* 675 S.W.2d 474 (Tenn.1984); *Heyer–Jordan & Assoc., Inc. v. Jordan,* 801 S.W.2d 814 (Tenn.Ct.App.1990). If it fits those criteria, it will be protected as a trade secret; if it does not, the employer will not have a valid reason for trying to protect that information. The plaintiff's statement of the law was redundant and would potentially have confused the jury. The Court did not err in rejecting the proposed instruction.

### 3. Information Contained in Wrongfully Disclosed Patent

Hickory claims that the Court "erred by allowing the jury to consider evidence that the Ledford patent disclosed, in part, Hickory's trade secret, because it was not an authorized disclosure and because Defendant Sam Crace did not learn anything from the patent." (Doc. 155, at 1–2.)

█ First of all, as this Court has already held, *see Hickory Specialties, Inc. v. Forest Flavors Int'l,* 12 F.Supp.2d at 767, information disclosed in a patent is a matter of public record and thus by definition not subject to trade secret protection. *See also* 1 Roger M. Milgrim, *Milgrim on Trade Secrets* § 1.03, at 1–98 (1997). Thus, if Hickory's trade secrets were disclosed in a patent, then they were no longer secret, and even if Sam Crace did not learn the supposed secrets from the patent but rather through his employment relationship with Hickory, he still would not be subject to liability for trade secret misappropriation in the event he went into business for himself using that information.

In support of the first part of the contention, that the Court erred in not instructing the jury that trade secrets disclosed in an unauthorized patent are still subject to trade secret protection, Hickory asserts that it "briefed this issue at length" in its response to the defendants' first motion for summary judgment, and that it submitted jury instructions to that effect as well. (Doc. 156, at 5–6.) Hickory presented only the following recommended instruction regarding patent law: "Public documents such as patents that reveal a general description of the technology at issue do not destroy trade secrets that are not disclosed." (Pl.'s Requested Instr. No. 17, Doc. 132, attach.) The Court in fact included that precise instruction in its charge to the jury. (Trial Tr. at ___ .) The Court finds that Hickory did raise the issue in its response to the first motion for summary judgment, but did not cite any authority for its position. (*See* Doc. 23, at 3.)

█ Moreover, as the defendants point out in their response to Hickory's motion for a new trial, Hickory failed to object to the admission of the Ledford patent at trial. Under Rule 103 of the Federal Rules of Evidence, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless . . . a timely objection or motion to strike appears of record . . . ." Fed. R.Evid. 103(a)(1). *See also Investors Credit Corp. v. Batie,* 995 F.2d 85, 89 (6th Cir.1993). Because it failed to object in a timely fashion, Hickory failed to preserve this issue for appeal, and may not now claim that the court erred in admitting the Ledford patent into evidence.

### 4. Exclusion of Reference to the Ledford Case

■ Hickory argues that the Court erred in excluding evidence of or reference to the Tennessee Court of Appeals's opinion in *Hickory Specialties, Inc. v. B & L Laboratories, Inc.*, 592 S.W.2d 583 (Tenn.Ct.App.1979) ("the Ledford case"). For the reasons delineated in this Court's Pretrial Order (Doc. 143, at 2–4), the Court finds that no error was committed in excluding reference to that holding. In particular, the Court found that the doctrines of collateral and judicial estoppel did not apply, and that even though reference to the Ledford case was arguably relevant as evidence of Hickory's efforts to protect its trade secrets, the probative value of the earlier decision was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, and was therefore excludable under Rule 403 of the Federal Rules of Evidence.

Moreover, as the defendants point out in their response, at trial Hickory was permitted to:

> (a) tell the jury that it had successfully prosecuted its lawsuit against Ledford; and (b) examine Don Crace in detail about his trade secrets testimony in the Ledford case. Hickory thus got to use the Ledford case for everything it wanted, other than for making a clearly improper argument that Sam Crace was somehow bound by a 20–year old decision in someone else's lawsuit.

(Doc. 157, at 5.) The Court agrees and finds that Hickory's contention is without merit.

### 5. The May 1982 Noncompetition Agreement

■ In its original complaint, Hickory claimed that defendant Sam Crace was in breach of an agreement signed by him in 1982 in which he promised never to compete with Hickory. (Doc. 1, at 8 ¶ 21.) The Court granted summary judgment on that claim in favor of the defendants in August 1997, finding that a noncompetition covenant unlimited as to time and space was unenforceable as a matter of Tennessee law. (Doc. 37, at 4–7.) The Court declined to modify the terms of the never-compete agreement, finding that the existence of a separate ten-year noncompetition agreement rendered modification unnecessary. Hickory presents no new arguments or new law in its motion for a new trial, and the Court sees no reason to revisit its earlier decision.

### 6. Plaintiff's Proposed Jury Instructions Numbered 9 and 10

■ Finally, Hickory assert that the Court erred in failing to instruct the jury that "the potential to develop Hickory's process by independent technology or other lawful means does not mean that defendants may, through breach of confidence, use the information in competition with Hickory, Sam Crace's former employer." (Doc. 155, at 2.) More specifically, Hickory objects to the Court's refusal to include verbatim its proposed jury instructions 9 and 10. The Court declined to include those instructions in full on the basis that parts were already incorporated into the definition of trade secrets and were thus redundant, while other parts were misleading in that they seemed to suggest that information in the public domain might still be protected as a trade secret, or based on case law that was neither apposite nor controlling.

Requested Instruction No. 9 reads:

> "The fact that the process at issue is based on existing technology does not prevent its being a trade secret. The potential to develop the process by independent technology affords the defendants no excuse to obtain the process through a confidential employer-employee relationship and then compete with the developer."

(Doc. 132, attach.) Requested Instruction No. 10 reads:

> The mere fact that lawful acquisition of a trade secret is possible does not mean that the defendants may, through a breach of confidence, gain the information in usable form and escape the efforts of inspection and analysis.

(Doc. 132.attach.). The Court determined that the trade secrets definition provided to the jury was sufficiently detailed, and emphasized to the jury that the first question at issue was whether the plaintiff was in posses-

sion of trade secrets. Only if the answer to that question was "yes" would the issue of misappropriation even enter into play. Because the jury and the Court both determined that Hickory did not prove the existence of trade secrets, the question of how the defendant might have learned any putative secrets became completely irrelevant. The Court did not err in significantly editing Hickory's proposed instructions.

## CONCLUSION

For the above reasons, the Court finds that plaintiff Hickory Specialties, Inc.'s claims of error are without merit. Hickory's motion for a new trial is therefore DENIED.

It is so ORDERED.